IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY FENTERS, et al., | No. CV-F-05-1630 OWW/DLB |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (Docs. 35, 37 & 39) AND DIRECTING PLAINTIFFS TO FILE FIRST AMENDED COMPLAINT |
| vs. | |
| YOSEMITE CHEVRON, et al., | |
| Defendant. | |

On December 22, 2005, plaintiffs Tiffany Fenters, Debra Fenters, and Virgil Fenters filed a Complaint for Damages and Declaratory Relief.  Tiffany is alleged to be a 22 year-old college student.  Her parents are Debra and Virgil Fenters.  The defendants are Abbco Investments, LLC dba Yosemite Chevron, Robert Abbate, James Abbate and John Abbate (the Abbate Defendants);[1] the County of Merced, Gordon Spencer, Marc

---

[1]The Complaint alleges that defendant Abbco Investments, LLC has an interest in defendant Yosemite Chevron; that defendant Robert Abbate has an ownership interest in Abbco and/or Yosemite Chevron; that defendant Robert Abbate represented himself to be the

1

1  Bacciarini, and Merle Wayne Hutton (the County Defendants); and

2  Victor Fung, Erin McIlhatton, and Cassabon & Associates, LLP (the

3  Cassabon Defendants).   All three sets of defendants have filed

4  motions to dismiss pursuant to Rule 12(b)(6), Federal Rules of

5  Civil Procedure.

6      The Complaint alleges that Tiffany Fenters was employed by

7  Yosemite Chevron on June 6, 2002 as a cashier/stock clerk; that

8  Tiffany was instructed to balance the register and clear the

9  register drawer of any cash in excess of $150 at the end of her

10  shift; that, shortly after beginning her employment, she learned

11  that she and other employees were required to reimburse Yosemite

12  Chevron for any funds lost as a result of "drive-offs" as a

13  condition of their continued employment and that employees were

14  required to pay for daily defalcations, regardless of the cause;

15  that Tiffany was required to work overtime without extra pay as a

16  condition of her continued employment regardless of her other

17  committments if additional help was needed and was informed that

18  ───────────────

19  owner and manager of Yosemite Chevron and was the primary complaining witness against Tiffany in the criminal prosecution;

20  that defendant James Abbate has an ownership interest in Abbco and/or Yosemite Chevron and also was a complaining witness against Tiffany in the criminal prosecution; that defendant John Abbate has

21  an ownership interest in Abbco and/or Yosemite Chevron and is the brother of Robert and James.  The Complaint alleges that each of

22  the individual Abbate defendants are "liable under state and federal law for his own actions and the acts of Yosemite Chevron's

23  and/or Abbco's employees, representatives, agents or assigns" and that each of the individual Abbate defendants are "liable under

24  federal law based on joint activity and/or conspiracy he engaged in, either himself or through the employees, representatives,

25  agents or assigns of Yosemite Chevron and/or Abbco, with individuals acting under color of law and within the course and

26  scope of their duties."

she was not entitled to overtime because she was a volunteer worker in those situations; that, within months of starting work at Yosemite Chevron, another employee expressed inappropriate and unwanted sexual interest in her, lured her to his residence under the false pretense that a business party was to take place and then put an unknown controlled substance in her drink, forced her to stay at his residence when she tried to leave and began to grab and touch her in a highly inappropriate sexual manner, and that, when Tiffany brought this incident to Yosemite Chevron's management, no effective remedial action was taken and no adverse personnel action was taken against the employee for his conduct; that, when another employee was videotaped taking money out of Tiffany's purse, the employee admitted taking the money but indicated that he was joking; that it became apparent that illicit drug use was occurring at Yosemite Chevron, including such use by defendant Robert Abbate; that Tiffany voiced numerous complaints about the pattern of illegal activity alleged in the Complaint; that based on the pattern of illegal activity and Yosemite Chevron's management's failure to take effective remedial action, Tiffany left her employment with Yosemite Chevron on March 26, 2003; that she was forced without compensation to return to the premises of Yosemite Chevron to put her decision in writing and that she was not paid all the compensation to which she was then legally entitled, including reimbursement for sums she had been illegally required to pay for "drive-offs" and other defalcations, and for overtime.  The

3

1   Complaint further alleges that defendants Robert Abbate and James

2   Abbate and other representatives of Yosemite Chevron went to the

3   Office of the Merced County District Attorney and made false and

4   retaliatory charges of embezzlement against Tiffany; that these

5   allegations were directed to the Office of the District Attorney,

6   instead of the law enforcement agency with primary jurisdiction,

7   because the complaining witnesses had a prior personal

8   relationship with defendant District Attorney Gordan Spencer;

9   that "available records indicate that Spencer directed and routed

10  the Abbates' and Yosemite Chevron's complaint not to the local

11  law enforcement agency with primary jurisdiction, as would

12  typically be the case, but instead to [defendant Merle Wayne

13  Hutton, Supervising Investigator for the Merced County District

14  Attorney]"; that "during the period of April, May and June 2003,

15  Hutton headed a result-oriented investigation into the Abbates'

16  and Yosemite Chevron's false allegations at their behest and at

17  Spencer's direction" and that Spencer and the Abbates

18  participated in this investigation.  The Complaint alleges that

19  Tiffany was charged with embezzlement in violation of the

20  California Penal Code on June 23, 2003 and booked on these

21  charges on August 7, 2003.  The Complaint alleges that basis for

22  the criminal prosecution was that Tiffany advised and instructed

23  another Yosemite Chevron employee, Alejandro Aceves, on how to

24  embezzle funds on a consistent substantial basis, that Tiffany

25  was personally responsible for embezzling in excess of $12,000

26  and that Aceves was responsible for embezzling in excess of

4

1   $19,000; that these allegations were false and without any

2   reliable evidentiary support; that, over the time the

3   embezzlement allegedly occurred, there was no corresponding drop

4   in income or inventory, the regular checks of the register

5   indicated losses consistent with the alleged embezzlement, there

6   was no indication that Tiffany was responsible for any of the

7   alleged suspicious activity because several employees work each

8   shift, that Yosemite Chevron's system of controls make its

9   records and the allegations of embezzlement highly suspect, and

10  that there was no indication that Tiffany was ever reported

11  during the subject time period as having any unexplained amounts

12  of cash or suspicious property.   The Complaint then alleges:

13          29.  The false and baseless allegations of
            embezzlement against Tiffany were supported
14          by the accountant firm retained on behalf of
            the prosecution, [defendant Cassabon &
15          Associates] and the accountants from Cassabon
            specifically assisting the prosecution,
16          [defendants Victor K. Fung and Erin M.
            McIlhatton].  These defendants disregarded
17          all of the above-outlined facts showing the
            embezzlement allegations to be baseless and
18          incredible, as well as the professional
            standards that are supposed to be followed by
19          accountants engaged to provide litigation
            services.  As a result, these defendants
20          produced misleading, result-oriented reports
            that served to add a false air of legitimacy
21          to the embezzlement allegations.

22  The Complaint further alleges that defendant Spencer attended a

23  hearing in the criminal proceeding on January 5, 2004 and

24  acknowledged on that date that he had a personal relationship

25  with the Abbates; that, despite Tiffany's lack of a criminal

26  history and the relatively small amount of the alleged loss, the

5

1  criminal proceeding received "'special attention'" and a felony
2  resolution was always demanded at Spencer's insistance."  The
3  Complaint further alleges that "despite any credible
4  incriminating facts or evidence, [defendant Deputy District
5  Attorney Mark Bacciarini] persisted in pursuing a felony
6  conviction at Spencer's instruction."  Trial commenced on
7  September 27, 2005 and Tiffany was acquitted on October 13, 2005.
8  The Complaint further alleges that plaintiffs sustained
9  approximately $60,000 in legal and related expenses, that the
10 delay in bringing the case to trial impaired Tiffany's ability to
11 pursue her education, forcing her to withdraw from several
12 classes and causing her to receive failing or unsatisfactory
13 grades in some of her clases; that Debra and Virgil lost time and
14 income producing activities as a result of attending court
15 proceedings and meetings with counsel and experts, that Tiffany
16 has developed stress related kidney stones, lost significant
17 amounts of sleep, experienced mental stress and anguish that
18 required the prescription of psychotropic medication, and
19 continues to suffer these symptoms; that Virgil has been placed
20 on psychotropic medication and was hospitalized as a result of
21 cardiac symptons related to the stress he endured, that Debra has
22 endured sleepliness and weight loss; that Tiffany, fearing
23 further retaliation, has left Merced County to continue her
24 education elsewhere, and that Debra and Virgil also live in fear
25 of retaliation and continue to suffer emotionally and financially
26 as a result of the defendants' wrongful acts.

1    The First Cause of Action is brought by Tiffany against all

2 defendants except Bacciarini pursuant to 42 U.S.C. § 1983 and

3 alleges taht defendants violated Tiffany's rights under the

4 Fourth Amendment "not to have her liberty restricted without

5 legal basis, to be arrested without probable cause, and to be

6 prosecuted maliciously without probable cause", the First Cause

7 of Action alleging that "defendants Yosemite Chevron, Abbco, the

8 Abbates, Fung, McIlhatton, and Cassabon were acting in joint

9 activity with and/or were conspiring with Spencer, Hutton, and

10 Merced County."

11    The Second Cause of Action is brought by Tiffany against all

12 defendants pursuant to 28 U.S.C. § 2201 and alleges:

13         39.  The foregoing factual allegations set
           forth an actual controversy with respect to
14         the violation of plaintiff Tiffany Fenters'
           federal constitutional rights under the
15         Fourth Amendment not to have her liberty
           restricted without legal basis, to be
16         arrested without probable cause, and to be
           prosecuted maliciously without probable
17         cause.  The foregoing factual allegations
           alse set forth, as to defendants Yosemite
18         Chevron, Abbco, and the Abbates, an actual
           controversy with respect to the violation of
19         Tiffany's federal labor law rights not to be
           denied overtime pay and other compensation
20         and not to be retaliated against for making
           good faith complaints in this regard.
21         Therefore, this proceeding is an appropriate
           one for declaratory relief under 28 U.S.C. §
22         2201.

23         40.  Plaintiff seeks a declaration from this
           Court that the defendants, based on  the
24         factual transaction underlying this
           proceeding, violated her rights under the
25         Fourth Amendment not to have her liberty
           restricted without legal basis, to be
26         arrested without probable cause, and to be

```
                    prosecuted maliciously without probable
                    cause.  This declaration may be based on all
                    of the facts underlying this proceeding
                    without regard to any issue of qualified or
                    absolute immunity, since such immunities only
                    apply to claims for monetary relief.
                    Plaintiff also seeks a declaration that
                    defendants Yosemite Chevron, Abbco, and the
                    Abbates violated her federal labor law rights
                    not to be denied overtime pay and other
                    compensation and not to be retaliated against
                    for making good faith complaints in this
                    regard.
```

The Third Cause of Action is brought by Tiffany against the Abbate Defendants and the Cassabon Defendants pursuant to California Civil Code § 52.1 and alleges that these defendants' alleged actions "constitute a deprivation of [Tiffany's] rights, privileges and immunities both under article I of the California Constitution and the Fourth Amendment, specifically, her rights not to have her liberty restricted without legal basis, to be arrested without probable cause, and to be prosecuted maliciously without probable cause" and that these defendants' "interference with these constitutional rights was accomplished by means of force, coercion, and intimidation, and/or the threat thereof."

The Fourth Cause of Action is brought by Tiffany against the Abbate Defendants and the Cassabon Defendants for false arrest under California common law, alleging that these defendants' acts caused Tiffeny "to be arrested without probable cause or other legal basis."

The Fifth Cause of Action is brought by Tiffany against the Abbate Defendants and the Cassabon Defendants for malicious prosecution under California common law, alleging that these

8

defendants' acts caused Tiffany "to be maliciously prosecuted without probable cause or other legal basis."

The Sixth Cause of Action is brought by all plaintiffs against the Abbate Defendants and the Cassabon Defendants for negligence under California common law, alleging that these defendants "had a duty to engage in the reasonable reporting of suspected crimes, avoiding false reports of crimes, and, as to Fung, McIlhatton, and Cassabon, the competent performance of accounting services in the litigation context", that these defendants' wrongful acts caused Tiffany "to be wrongfully detained, arrested and prosecuted without probable cause or other legal basis" and caused Debra and Virgil "to sustain financial, physical and emotional losses."

The Seventh Cause of Action is brought by Tiffany against the Abbate Defendants and the Cassabon Defendants for intentional infliction of emotional distress, alleging that these defendants intentionally engaged in outrageous conduct that resulted in Tiffany being "wrongfully detained, arrested and prosecuted without probable cause or other legal basis ... and ... were done in disregard of the probability of their causing plaintiff emotional distress."

The Eighth Cause of Action is brought by Tiffany against the Abbate Defendants and the Cassabon Defendants for negligent infliction of emotional distress.

The Ninth Cause of Action is brought by Tiffany against the Abbate Defendants pursuant to 29 U.S.C. § 201, *et seq.*, alleging

9

1  that "[b]y refusing to pay ... Tiffany ... overtime and other

2  compensation to which she was clearly entitled, the defendants

3  have denied her wages that she earned during her employment",

4  that the "foregoing actions are in violation of 29 U.S.C. § 201,

5  *et seq.*, and dictate that the defendants are liable to the

6  plaintiff" and these violations were willful, entitling Tiffany

7  to additional liquidated damages.

8      The Tenth Cause of Action is brought by Tiffany against the

9  Abbate Defendants pursuant to 29 U.S.C. § 215 *et seq.*, alleging

10  that the Abbate Defendants violated that anti-retaliation

11  provision of the Fair Labor Standards Act, 29 U.S.C. §§ 215, 216,

12  by retaliating against Tiffany for her complaints about the

13  denial of compensation and overtime rights.

14      The Eleventh Cause of Action is brought by Tiffany against

15  the Abbate Defendants pursuant to California Labor Code §§ 98.6,

16  232.5 and 1102.5, alleging that the Abbate Defendants retaliated

17  against Tiffany for complaining to the Abbate Defendants about

18  the denial of her rights to compensation and benefits under

19  federal and state law.[2]

20      The Thirteenth Cause of Action is brought by Tiffany against

21  the Abbate Defendants for quantum meruit under California common

22  law, alleging that the Abbate Defendants denied Tiffany wages

23  that she earned during her employment by failing to pay overtime

24  _____

25      [2]The Twelfth Cause of Action is brought by Tiffany against the
    Abbate Defendants.  The Abbate Defendants do not move for dismissal
26  of the Twelfth Cause of Action.

10

1  and other compensation to which she was entitled.

2      The Fourteenth Cause of Action is brought by Tiffany for

3  defamation under California common law against the Abbate

4  Defendants and the Cassabon Defendants, alleging that these

5  defendants "intentionally caused the publication of false and

6  unprivileged oral and written statements that had a tendency to

7  damage the plaintiff Tiffany Fenters' reputation."

8      The Complaint prays for compensatory damages, declaratory

9  relief, punitive damages as to the federal civil rights causes of

10 action, treble damages under California Civil Code § 52.1,

11 liquidated damages under federal and state labor laws, and for

12 attorneys' fees and costs of suit.

13     **A.  Standards Governing Motion to Dismiss**.

14     A motion to dismiss under Rule 12(b)(6) tests the

15 sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729,

16 732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is

17 appropriate only where "it appears beyond doubt that the

18 plaintiff can prove no set of facts in support of his claim which

19 would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-

20 46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the

21 complaint lacks a cognizable legal theory or where the complaint

22 presents a cognizable legal theory yet fails to plead essential

23 facts under that theory. *Robertson v. Dean Witter Reynolds,*

24 *Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to

25 dismiss under Rule 12(b)(6), the court must assume the truth of

26 all factual allegations and must construe all inferences from

11

them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

   **B.  Motion to Dismiss by the County Defendants.**

   The County defendants move for dismissal on several grounds.

   **1.  First Cause of Action.**

   **a.  Immunity of Defendants Spencer and Bacciarini.**

   Defendants Spencer and Bacciarini move for dismissal of the First Cause of Action on the ground that each is entitled to absolute immunity from liability under 42 U.S.C. § 1983.[3]

   The First Cause of Action is not alleged against defendant

---

[3]Absolute or qualified immunity does not bar actions for declaratory or injunctive relief. *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir.1993).

Bacciarini.  However, defendant Spencer is named in this cause of action.

A prosecutor is protected by absolute immunity from liability for damages under Section 1983 "when performing the traditional functions of an advocate." *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997).  However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Prosecutorial immunity depends on "the nature of the function performed, not the identity of the actor who performed it." *Kalina*, 522 U.S. at 127.  Prosecutors are entitled to qualified immunity, rather than absolute immunity, when they perform administrative functions or "investigative functions normally performed by a detective or police officer." *Kalina*, 522 U.S. at 126.  The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.  The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. *Burns v. Reed*, 500 U.S. 478, 486-487 (1991).

To qualify as advocacy, an act must be "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  Thus, a prosecutor enjoys absolute immunity from liability from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial. *Imbler*, 424

1  U.S. at 430.  A prosecutor is also absolutely immune for direct

2  participation in a probable cause hearing, *Burns*, 500 U.S. at

3  491, and for preparing and filing charging documents.  *Kalina*,

4  522 U.S. at 130.  *Buckley v. Fitzsimmons* denied absolute immunity

5  to prosecutors who fabricated evidence "during the early stage of

6  the investigation" when "police officers and assistant

7  prosecutors were performing essentially the same investigatory

8  functions."  509 U.S. at 273.  *Buckley* also denied absolute

9  immunity to prosecutors accused of holding a defamatory press

10  conference, concluding that that activity "had no functional tie

11  to the judicial process."  Id. at 277.  The Supreme Court has

12  also held that a prosecutor does not have absolute immunity for

13  providing legal advice that probable cause exists to arrest a

14  suspect, *Burns*, 500 U.S. at 491, or for personally attesting to

15  the truth of evidence in support of charging documents.  *Kalina*,

16  522 U.S. at 130.  As explained in *Genzler v. Longanbach*, 410 F.3d

17  630, 637-638 (9th Cir.2005), *cert. denied*, ___ U.S. ___, 126

18  S.Ct. 736, 737, 749 (2005):

19          The analysis of whether prosecutorial acts
           constitute advocacy or police-type
20          investigative work is complicated by the fact
           that the Supreme Court has resisted any
21          attempt to draw a bright-line between the
           two.  In [*Buckley*], the court noted that '[a]
22          prosecutor neither is, nor should consider
           himself to be, an advocate before he has
23          probable cause to have anyone arrested.' 509
           U.S. at 274 ... This might suggest that once
24          probable cause is present, or once an arrest
           has been made, a prosecutor assumes an
25          advocacy-related role and enjoys absolute
           immunity.  However, in a note appended to the
26          quoted passage, the Court rejected this

14

approach, explaining that 'a determination of
probable cause does not guarantee a
prosecutor absolute immunity for liability
for all actions taken afterwards.  Even after
that determination ... a prosecutor may
engage in "police investigative work" that is
entitled to only qualified immunity.'  *Id.* at
274 n.5 ....

The Court has also rejected the idea that
prosecutors are entitled to qualified
immunity when they are engaged in
investigation.  In [*Buckley*], the Court said
that 'evaluating evidence and interviewing
witnesses' in preparation for trial is
advocacy.  *Id.* at 273.  This is true,
notwithstanding the fact that some of the
activities a prosecutor takes in preparation
for trial, like the interview of witnesses,
may be investigatory in nature.  The question
is whether a prosecutor's investigation is of
the type normally done by police, in which
case prosecutors enjoy only qualified
immunity, or whether an investigation is
bound up with the judicial process, thus
affording prosecutors the heightened
protection of absolute immunity.

Here, defendant Spencer argues, the Complaint alleges

that when the Abbates reported the embezzlement to him, he agreed

to prosecute Tiffany based on his friendship with the Abbate

family and that he selected a different investigator to work the

prosecution's case because of his friendship with the Abbate

family.  Defendant Spencer argues that, if true, this conduct

could be considered reprehensible, but it is not actionable under

Section 1983.

However, as plaintiff argues, the allegations of the

Complaint are that defendant Spencer agreed to prosecute Tiffany

because of his friendship with the Abbate family and that

defendant Spencer directed defendant Hutton, rather than the

15

1  police department, to investigate the alleged embezzlement, and

2  that defendant Spencer participated in that investigation.  While

3  it appears that defendant Spencer is entitled to absolute

4  immunity because of the decision to initiate the prosecution of

5  Tiffany, the allegation that defendant Spencer participated in

6  the investigation may negate absolute immunity from liability

7  arising out of that investigation.  "A prosecutor gathering

8  evidence is more likely to be performing a quasi-judicial

9  advocacy function when the prosecutor is 'organiz[ing],

10  evaluati[ng], and marshaling [that] evidence' in preparation for

11  a pending trial, in contrast ot the police-like activity of

12  *acquiring* evidence which might be used in a prosecution.'"

13  *Genzler*, 410 F.3d at 639.

14      Therefore, the allegations against defendant Spencer for

15  initiating prosecution of Tiffany must be DISMISSED based on

16  absolute prosecutorial immunity, but the allegations that

17  defendant Spencer participated in a wrongful investigation of the

18  alleged embezzlement survive.

19                  **b.   Immunity of Defendant Hutton**.

20      Defendant Hutton, Supervising Investigator for the Merced

21  County District Attorney, moves to dismiss the claims against him

22  on the ground of absolute immunity, citing *Gobel v. Maricopa*

23  *County*, 867 F.2d 1201, 1203 n.5 (9th Cir.1989)("Investigators,

24  employed by a prosecutor and performing investigative work in

25  connection with a criminal prosecution, are entitled to the same

26  degree of immunity as prosecutors.")

16

1   The only allegations in the Complaint against defendant

2 Hutton are that defendant Spencer "directed and routed" the

3 investigation of the Abbate Defendants complaint that Tiffany had

4 embezzled funds to defendant Hutton and that "during the period

5 of April, May and June 2003, Hutton headed a result-oriented

6 investigation into the Abbates' and Yosemite Chevron's false

7 allegations at their behest and at Spencer's direction."

8   Because defendant Spencer is not entitled to absolute

9 immunity, neither is defendant Hutton.  Therefore, the motion to

10 dismiss is DENIED.

11     **c.   Liability of County of Merced**.

12   Defendant County of Merced moves for dismissal of the First

13 Cause of Action on the ground that the County cannot be held

14 vicariously liable under *Monell v. Department of Social Services*,

15 436 U.S. 658 (1978) for the acts of defendants Bacciarini or

16 Hutton as they are not "final policy makers' for the Merced

17 County District Attorney and cannot be held liable under *Monell*

18 for the actions of defendant Spencer because Spencer acts as an

19 arm of the state, not the County.

20   In opposing this aspect of the motion to dismiss, plaintiffs

21 "do not disagree with the defendants' arguments".  However,

22 citing *Chaloux v. Killeen*, 886 F.2d 247, 250-251 (9th Cir.1989),

23 plaintiffs contend that the County may be found liable under the

24 Second Cause of Action for declaratory relief, even absent a

25 custom or policy under *Monell*.

26   In *Chaloux*, the Ninth Circuit held that *Monell* did not apply

17

to any "official policy or custom" requirement to foreclose a suit for prospective relief against a county or its officials for enforcing allegedly unconstitutional state laws.  Plaintiffs assert that, because they seek prospective equitable relief, i.e., expungement of Tiffany's arrest record, the County is a proper defendant in this action.

However, as the County Defendants note in their reply brief, there are no allegations in the Complaint to support the prospective equitable relief described by plaintiffs, expungement of Tiffany's criminal record nor that the County Defendants maintain this record or have the ability to effectuate the requested expungement.  Furthermore, the County Defendants argue, the principal set forth in *Chaloux* does not negate dismissal of the County from this action, contending:

> Where a party seeks an injunction to prevent a particular action by a municipality, the action is properly maintained against the municipal body.  In the instant case, there are no allegations as to defendant County of Merced, other than it is the employing body for the remaining named public entity defendants, moreover plaintiff seeks no injunctive relief in her Complaint.

The First Cause of Action is DISMISSED against defendant County of Merced with LEAVE TO AMEND.

### 2.  Second Cause of Action.

The County Defendants move to dismiss the Second Cause of Action for declaratory relief as inappropriate.[4]

---

[4]28 U.S.C. § 2201(a) provides in pertinent part:

18

1    "The Declaratory Judgment Act embraces both constitutional

2    and prudential concerns.  A lawsuit seeking federal declaratory

3    relief must first present an actual case or controversy within

4    the meaning of Article III, section 2 of the United States

5    Constitution."  *Government Employees Ins. Co. v. Dizol*, 133 F.3d

6    1220, 1222 (9th Cir.1998).  "It must also fulfill statutory

7    jurisdictional prerequisites."  *Id.* at 1222-1223.  "If the suit

8    passes constitutional and statutory muster, the district court

9    must also be satisfied that entertaining the action is

10   appropriate.  This determination is discretionary, for the

11   Declaratory Judgment Act is 'deliberately cast in terms of

12   permissive, rather than mandatory, authority.' ... The Act 'gave

13   the federal courts competence to make a declaration of rights; it

14   did not impose a duty to do so.' .... Id. at 1223.

15       In moving to dismiss the Second Cause of Action, the County

16   Defendants refer to *United States v. Doherty*, 786 F.2d 491, 498

17   (2nd Cir.1986):

18              The purpose of the [Declaratory Judgment Act]
             has been expressed in a variety of ways:
19           'Essentially, a declaratory relief action
             brings an issue before the court that
20           otherwise might need to await a coercive

21   _____

22              In a case of actual controversy within its
             jurisdiction ... any court of the United
23           States, upon the filing of an appropriate
             pleading, may declare the rights and other
24           legal relations of any interested party
             seeking such declaration, whether or not
25           further relief is or could be sought.  Any
             such declaration shall have the force and
26           effect of a final judgment or decree and shall
             be reviewable as such.

                                    19

1    action brought by the declaratory relief
     defendant.' ...; the fundamental purpose of
2    the DJA is to 'avoid accrual of avoidable
     damages to one not certain of his rights and
3    to afford him an early adjudication without
     waiting until his adversary should see fit to
4    begin suit, after damages have accrued,' ...;
     the primary purpose of the DJA is to have a
5    declaration of rights not already determined,
     not to determine whether rights already
6    adjudicated were adjudicated properly, ...;
     the declaratory judgment procedure 'creates a
7    means by which rights and obligations may be
     adjudicated in cases involving an actual
8    controversy that has not reached the stage at
     which either party may seek a coercive
9    remedy, or in which the party entitled to
     such a remedy fails to sue for it,' ...; the
10   declaratory judgment procedure 'enable[s] a
     party who is challenged, threatened or
11   endangered in the enjoyment of what he claims
     to be his rights, to initiate the proceedings
12   against his tormentor and remove the cloud by
     an authoritative determination of the
13   plaintiff's legal right, privilege and
     immunity and the defendant's absence of
14   right, and disability,' ....

15       The County Defendants argue that the Second Cause of Action

16   should be dismissed because plaintiffs are not seeking a

17   declaration of the rights and duties of the parties.  Rather, all

18   of the acts alleged in the Complaint have already occurred and

19   the granting of declaratory relief will not prevent further

20   damages or further the purposes of the Declaratory Judgment Act.

21       Plaintiffs, characterizing the County Defendants' argument

22   as claiming that the declaratory relief claim is moot in the

23   Article III sense, contend that even where an equitable relief

24   claim involves past exposure to illegal conduct, a present case

25   or controvesy exists if there are continuing, present adverse

26   effects, *see O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974),

1   and that dismissal of the Second Cause of Action "on the grounds

2   of mootness would be justified only if it were absolutely clear

3   that the litigant no longer had any need of the judicial

4   protection it sought."  *Adarand Constructors, Inc. v. Slater*, 528

5   U.S.C 216, 224 (2000).

6        Plaintiffs argue that the existence of records of an

7   unconstitutional arrest is a sufficient adverse consequence to

8   warrant declaratory relief, citing among other cases, *Maurer v.*

9   *Ind. and As Members of Los Angeles Cty.*, 691 F.2d 434 (9th

10  Cir.1982).

11       In *Maurer*, a state prisoner brought a civil rights action

12  alleging that his arrest was invalid on federal constitutional

13  grounds and seeking a permanent injunction prohibiting

14  dissemination of his arrest record.  The Ninth Circuit held that

15  the district erred in dismissing Mauer's expungement action:

16              It is well-settled that the federal courts
                have inherent equitable power to order 'the
17              expungement of local arrest records as an
                appropriate remedy in the wake of police
18              action in violation of constitutional
                rights.' ... Contrary to the district court's
19              conclusion, Maurer has no adequate remedy
                under state law for his claim.  The state
20              statute upon which the district court relied
                provides for the destruction of arrest
21              records only where the court determines after
                an acquittal that the defendant is 'factually
22              innocent of the charge.'  California Penal
                Code § 851.85.  Mauer seeks a declaratory
23              judgment that his arrest violated the Fourth
                Amendment.  There is no adequate remedy at
24              law for that claim.

25  691 F.2d at 437.

26       Plaintiffs further argue that there is also the possibility

1 that Tiffany could be disadvantaged in terms of credibility,

2 promotions, or future employment as a result of having a serious

3 felony arrest on her record.  Therefore, plaintiffs argue, the

4 Second Cause of Action is not moot.

5     The County Defendants reply that the attempt in plaintiffs'

6 opposition to portray the relief sought as prospective equitable

7 relief is "clearly a litigation tactic argued to avoid the

8 unambiguous rule of law that Declaratory Relief cannot be

9 maintained to redress past wrongs."  The County Defendants again

10 note that plaintiffs' reference to expungement of criminal

11 records is unsupported by any allegations in the Complaint and is

12 not even alleged in the Second Cause of Action.  The County

13 Defendants assert:

14         While it is true that a plaintiff's complaint
        should be construed liberally toward
15         sufficiency, and all reasonable inferences
        should be drawn in favor of the pleading, it
16         is improper to ask the Court to fill in the
        gap of potential meanings by assuming facts
17         which have not been pled or assuming
        defendants have violated laws in ways a
18         plaintiff has not alleged.

19     In their reply brief, the County Defendants argue that the

20 Second Cause of Action against defendant Bacciarini should be

21 dismissed because plaintiffs seek a declaration of the

22 unconstitutionality of Bacciarini's prosecution of Tiffany

23 "without identifying a present or justiciable controversy".  The

24 County Defendants assert that "all alleged acts on the part of

25 defendant Marc Bacciarini are within the ambit of the absolute

26 immunity protection from damages ... and that plaintiff has not

22

1  pled any facts which would establish a justiciable controversy

2  under the Declaratory Judgment Act."

3      Plaintiff has not alleged any pending prosecution of Tiffany

4  by defendant Bacciarini nor does the Complaint contain any

5  allegations that plaintiffs have sought expungement of Tiffany's

6  criminal record, nor that the County Defendants maintain this

7  record or have the ability to effectuate the requested

8  expungement.

9      Therefore, the Second Cause of Action is DISMISSED against

10  the County Defendants with LEAVE TO AMEND.

11              **3.  <u>Claim for Punitive Damages</u>**.

12      The County Defendants move to dismiss the prayer for

13  punitive damages.

14      There is no question that punitive damages are not

15  recoverable in a Section 1983 action against a municipality, *City

16  of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), or

17  against a public entity under California law, California

18  Government Code § 818.  Therefore, the prayer for punitive

19  damages against the County of Merced is dismissed with prejudice.

20      However, defendants Spencer and Hutton are sued in their

21  individual capacities in the First Cause of Action.  If neither

22  of these defendants is entitled to absolute or qualified

23  immunity, an individual defendant can be found liable for

24  punitive damages under Section 1983.  *See Ruvalcaba v. City of

25  Los Angeles*, 167 F.3d 514, 524 (9th Cir.), *cert. denied*, 528 U.S.

26  1003 (1999).  In addition, Government Code § 818 does not

23

1  prohibit a claim of punitive damages against employees of a

2  public entity. *Runyon v. Superior Court*, 187 Cal.App.3d 878

3  (1986).  Therefore, the request for dismissal of the prayer for

4  punitive damages against defendants Spencer and Hutton is DENIED.

5      **C.  Motion to Dismiss by the Abbate Defendants**.

6      The Abbate Defendants move to dismiss the causes of action

7  alleged against them, except the Twelfth Cause of Action.

8          **1.  First Cause of Action for Violation of Section**

9  **1983**.

10     The Abbate Defendants move to dismiss this cause of action

11 on three grounds, each of which will be discussed under separate

12 heading.

13          **a.  Absolute Witness Immunity**.

14     Contending that the Complaint alleges that the Abbate

15 Defendants conspired with the District Attorney's Office and the

16 Cassabon Defendants to provide false testimony against Tiffany,

17 the Abbate Defendants argue that the First Cause of Action must

18 be dismissed because of absolute witness immunity.

19     In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Supreme

20 Court held that a witness has absolute immunity from liability

21 for civil damages under Section 1983 for giving perjured

22 testimony at trial.  In *Franklin v. Terr*, 201 F.3d 1098 (9th

23 Cir.2000), the Ninth Circuit applied *Briscoe*'s immunity to Terr,

24 a psychiatrist called by the prosecution who testified in

25 Franklin's criminal trial based on charges by his daughter,

26 Franklin-Lipsker, that Franklin had murdered a childhood fried

twenty years earlier, and who was later sued by Franklin under

Section 1983.  Franklin alleged that Terr had conspired with

others to present perjured testimony at the criminal trial.  The

Ninth Circuit held:

> In the instant case, Franklin is attempting
> to circumvent Terr's absolute witness
> immunity by alleging that Terr conspired with
> others to present false testimony.  We are
> persuaded that allowing a plaintiff to
> circumvent the *Briscoe* rule by alleging a
> conspiracy to present false testimony would
> undermine the purposes served by granting
> witnesses absolute immunity from liability
> for damages under § 1983.  Absolute witness
> immunity is based on the policy of protecting
> the judicial process and is 'necessary to
> assure that judges, advocates, and witnesses
> can perform their respective functions
> without harassment or intimidation.' ... As
> the Court stated in *Briscoe*, '[a] witness's
> apprehension of subsequent damages liability
> might induce two forms of self censorship.
> First, witnesses might be reluctant to come
> forward to testify.  And once a witness is on
> the stand, his testimony might be distorted
> by the fear of subsequent liability.' ...
> Moreover, as the district court correctly
> observed, '[a]ny other holding would
> eviserate absolute immunity since a witness
> rarely prepares her testimony on her own.'
> ....
>
> Franklin alleges that Terr conspired with
> Franklin-Lipsker by interviewing her before
> Franklin's trial and by then incorporating
> information obtained from those interviews
> into her own testimony.  Franklin also
> alleges that Terr provided Franklin-Lipsker
> 'with a description of the sort of details
> that would make her testimony more
> persuasive, which Franklin-Lipsker then
> incorporated into her continually evolving
> "recollection" of the Nason murder.'  The
> ostensible purpose of this conspiracy was to
> ensure that one person's testimony did not
> contradict the other's testimony.  But
> because Terr's alleged conspiratorial

25

> behavior is inextricably tied to her
> testimony, we find that she is immune from
> damages.  We are not presented with, and do
> not decide, the question whether § 1983
> provides a cause of action against a
> defendant who conspired to present the
> perjured testimony of another but who did not
> testify as a witness herself.

201 F.3d at 1101-1102.

Plaintiffs respond that the Abbate Defendants are not entitled to dismissal of the First Cause of Action on the ground of absolute witness immunity because the Complaint does not allege a conspiracy to concoct false testimony but the "wholesale fabrication of criminal charges."  Plaintiffs refer to *Cunningham v. Gates*, 229 F.3d 1271, 1291 (9th Cir.2000), wherein the Ninth Circuit, while recognizing that defendants, as witnesses, are entitled to absolute immunity based on their testimony notwithstanding allegations of conspiracy to commit perjury, held: "Obviously, testimonial immunity does not encompass non-testimonial acts such as fabricating evidence."[5]

In their reply brief, the Abbate Defendants contend that plaintiffs' reliance on <u>Gates</u> is misplaced:

> [T]he Fenters' complaint is notably bereft of
> allegations that are not closely tied to the
> alleged false testimony.  There are no
> allegations that the Abbate defendants
> manufactured or procured false evidence,
> destroyed evidence and or coerced witnesses.
> Rather beyond the allegations of alleged

---

[5]Plaintiffs also refer to *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002) as holding that a pathologist who falsified an autopsy report is a proper defendant under Section 1983.  *Galbraith* did not discuss absolute witness immunity but, rather, the heightened pleading standard.

> false testimony is simply making a complaint
> to the district attorneys office.  Nor is
> there any allegation that the only source of
> any of the disputed evidence was the Abbates.

The Abbate Defendants are entitled to dismissal of the First
Cause of Action to the extent that any of the Abbate Defendants
testified at the trial (or preliminary hearing).  The Abbate
Defendants are not entitled to dismissal of the First Cause of
Action on this ground to the extent that the Complaint can be
construed as alleging that the Abbate Defendants fabricated
evidence or conspired to do so.  However, the Complaint does not
specifically allege that the Abbate Defendants (or any other
defendants) fabricated any evidence or conspired to do so.  The
allegations are that the complaint of embezzlement was false,
baseless, and in retaliation for Tiffany's complaints to her
employer about wages and sexual harassment but there is no
allegation that the evidence supporting that complaint of
embezzlement was fabricated.

The First Cause of Action is DISMISSED on this ground with
LEAVE TO AMEND.

<b>b.   <u>Failure to Allege Color of State Authority</u>.</b>

The Abbate Defendants move to dismiss the First Cause of
Action on the ground that the Complaint fails to allege that the
Abbate Defendants acted with color of state authority.

In so moving, these defendants again rely on *Franklin v.
Terr*:

> To state a claim under 42 U.S.C. § 1983, a
> plaintiff must allege that (1) he or she was

27

> deprived of a right secured by the
> Constitution or federal law; and (2) the
> defendant acted 'under color of state
> authority' in depriving the plaintiff of this
> right ... An allegation that a private person
> conspired with a state official satisfies the
> requirement that a defendant acted under
> color of state authority.

201 F.3d at 1100.  The Abbate Defendants complain that the

Complaint merely alleges that they are "liable under federal law

based on the joint activity and/or conspiracy ... with

individuals acting under color of law and within the course and

scope of their duties."  The Abbate Defendants contend that the

Complaint "refers to the District Attorneys office as acting

under color of state law, not the Abbate Defendants."  With

regard to defendant John Abbate, the only allegation connecting

John Abbate with the actions alleged in the Complaint is that he

has an ownership interest in Abbco and/or Yosemite Chevron and

that he is the brother of defendants James and Robert Abbate.  In

their reply brief, the Abbate Defendants refer to *Degrassi v.

City of Glendora*, 207 F.3d 636, 647 (9th Cir.2000):

> ... Under § 1983, a claim may lie against a
> private party who 'is a willful participant
> in joint action with the State or its agents.
> Private persons, jointly engaged with state
> officials in the challenged action, are
> acting 'under color' of law for purposes of §
> 1983 actions.'  *Dennis v. Sparks*, 449 U.S.
> 24, 27-28 ... (1980).  However, a bare
> allegation of such joint action will not
> overcome a motion to dismiss; the plaintiff
> must allege 'facts tending to show that [the
> defendants] acted "under color of state law
> or authority."'  *Sykes v. State of Cal.
> (Dep't. of Motor Vehicles)*, 497 F.2d 202 (9th
> Cir.1974).

28

1  The Abbate Defendants also refer to *Collins v. Womancare*, 878

2  F.2d 1145, 1154 (9ᵗʰ Cir.1989):

3          One way to establish joint action is to
           demonstrate a conspiracy ... Joint action
4          also exists where a private party is 'a
           willful participant in joint action with the
5          State or its agents.  Private persons,
           jointly engaged with state officials in the
6          challenged action, are acting "color of law"
           for purposes of § 1983 actions.' ....
7
           In a recent case, we observed that '[t]he
8          joint action inquiry focuses on whether the
           state has so far insinuated itself into a
9          position of interdependence with [the private
           party] that it must be recognized as a joint
10         participant in the challenged activity. ....'
           ... Joint action therefore requires a
11         substantial degree of cooperative action.

12 Merely complaining to the police does not convert a private party

13 into a state actor. *Id.* at 1155.  Nor is the execution by a

14 private party of a sworn complaint which forms the basis of an

15 arrest enough to convert the private party's acts into state

16 action.  *Id.*  In *Franklin v. Fox*, 312 F.3d 423, 445 (9ᵗʰ

17 Cir.2002), the Ninth Circuit further explained:

18         A plaintiff may demonstrate joint action by
           proving the existence of a conspiracy or by
19         showing that the private party was 'a willful
           participant in joint action with the State or
20         its agents.' ... To be liable as co-
           conspirators, each participant in a
21         conspiracy need not know the exact details of
           the plan, but each participant must at least
22         share the common objective of the conspiracy
           ... To be liable as a co-conspirator, a
23         private defendant must share with the public
           entity the goal of violating a plaintiff's
24         constitutional rights ....

25         Our cases have been careful to require a
           substantial degree of cooperation before
26         imposing civil liability for actions by

29

private individuals that impinge on constitutional rights.

To the extent that the Abbate Defendants seek dismissal of the First Cause of Action on the ground that the Complaint fails to allege that they acted under color of state authority, the motion is denied.  Allegations that the Abbate Defendants conspired with other state-actor defendants who are alleged to have acted under color of state law, in combination with private actors, is sufficient to state a claim.

However, there are no allegations in the Complaint that defendant John Abbate participated in any of the alleged wrongful actions.  Ownership interest in Abbco, a limited liability corporation, or Yosemite Chevron, is not sufficient to impose liability without participation, knowledge and/or ratification. Therefore, DISMISSAL IS GRANTED WITH LEAVE TO AMEND.

### c.   Sufficiency of Allegations of Conspiracy

The Abbate Defendants further argue that the First Cause of Action fails to allege sufficient specific facts to support a claim of conspiracy which "must survive the application of the heightened pleading standard."  In so arguing, the Abbate Defendants cite *Coverdell v. Dept. of Social & Health Services*, 834 F.2d 758, 769 (9th Cir.1987).

*Coverdell* is not valid authority for this claim.  *Coverdell* involved the appellate review of a summary judgment order and not the standards to be applied in determining whether allegations of conspiracy state a claim within the meaning of Rule 12(b)(6).

1  Furthermore, the Supreme Court has rejected the requirement of a

2  heightened pleading standard in civil rights cases, ruling that

3  the sufficiency of the allegations must be governed by

4  application of Rules 8 and 9, Federal Rules of Civil Procedure.

5  *See Crawford-El v. Britton*, 523 U.S. 574 (1998); *Leatherman v.*

6  *Tarrant County Narcotics Intelligence and Coordination Unit*, 507

7  U.S. 163 (1993); *see also Galbraith v. County of Santa Clara*, 307

8  F.3d 1119 (9th Cir.2002); *Empress LLC v. City and County of San*

9  *Francisco*, 419 F.3d 1052 (9th Cir.2005).

10      The Abbate Defendants object that there are no allegations

11 in the Complaint from which it may be inferred that John Abbate

12 did anything whatsoever to further the alleged conspiracy.  With

13 regard to the other Abbate Defendants, it is argued that there

14 are no allegations "as to how the Abbate defendants allegedly

15 conspired with each other, the District Attorneys office and the

16 Cassabon defendants to provide false testimony."

17      Plaintiffs rejoin that the allegations of the Complaint

18 suffice to alert defendants to the sequence of events and the

19 relationship between the various defendants that are "more than

20 sufficient to plead a conspiracy through circumstantial facts"

21 and demonstrate the "requisite 'who, what, where, and when'

22 information regarding the conspiracy."

23      With the exception of defendant John Abbate, the conspiracy

24 allegations arguably are sufficient to permit defendants to frame

25 a response.  The Complaint does not make clear whether multiple

26 conspiracies are alleged and, if so, who are the members, what

31

1   actions were allegedly taken by those members in furtherance of

2   the conspiracies, and at what times.  Furthermore, plaintiffs

3   concede that more specific allegations with regard to the

4   participation of the Abbate Defendants can be made.  The

5   conspiracy claim is DISMISSED with LEAVE TO AMEND to allow

6   plaintiffs to allege more specifically the factual basis of the

7   conspiracy or conspiracies, particularly with respect to the

8   Abbate Defendants.

9           **2.   Second Cause of Action for Declaratory Relief**.

10          The Abbate Defendants move to dismiss the Second Cause of

11   Action for declaratory relief on the same ground the County

12   Defendants advance.  *See discussion supra*.

13          Plaintiffs oppose the motion on the same basis as argued

14   *infra*.  Plaintiffs further argue:

15          [P]laintiffs' claim for damages due to
             unconstitutional arrest and prosecution in
16          the First Cause of Action is subject to
             potential dismissal, at least as to some
17          defendants, on the grounds of qualified
             immunity, and it is also subject to possible
18          findings of no causation, zero damages, or
             nominal damages.  Under any of these
19          scenarios, even if the facts demonstrate that
             one or more of the defendants acted
20          unconstitutionally, the First Cause of Action
             may not provide any meaningful relief.
21          Moreover, there are official public
             documents, the records of plaintiff Tiffany
22          Fenters' undeserved contact with the criminal
             justice system.  Even if the First Cause of
23          Action succeeds, it will not provide a basis
             for expunging the false public documents that
24          can have an obvious negative impact on her
             reputation, and future prospects.  Even
25          further, a successful result as to the First
             Cause of Action would not do anything to
26          prevent future similar abuses, while the

> Court could appoint a special master, issued
> detailed prospective decrees, or take other
> remedial steps based on the Second Cause of
> Action.

There is no basis to suggest that the Abbate Defendants can do anything about expunging Tiffany's criminal record.  That defendants Spencer and Hutton may be entitled to absolute or qualified immunity from liability has no application to the Abbate Defendants.  If there is no causation found with respect to the First Cause of Action, there will be no basis for proceeding with the Second Cause of Action.  Plaintiffs' description of actions that could be taken by the Abbate Defendants to prevent future abuses are speculative and impracticable to enforce.

The motion to dismiss the Second Cause of Action as to the Abbate Defendants is GRANTED with LEAVE TO AMEND.

### 3.  **Third Cause of Action for Violation of California Civil Code § 52.1**.

The Abbate Defendants move to dismiss the Third Cause of Action for violation of California Civil Code § 52.1 on several grounds.[6]

---

[6]California Civil Code § 52.1(b) provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute ... a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." Section 52.1(a) provides for an action by the Attorney General, district attorney or city attorney "[i]f a person or persons,

1            **a.**  **Based on Allegations of First Cause of Action**.

2     The Abbate Defendants move for dismissal of this cause of

3 action on the same grounds as set forth for dismissal of the

4 First Cause of Action.  *See discussion infra*.

5            **b.**  **Statute of Limitations**.

6     The Abbate Defendants move for dismissal on the ground that

7 the Third Cause of Action is barred by the two-year statute of

8 limitations set forth in California Code of Civil Procedure § 340

9 and *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 760 (2002).[7]

10 In *Gatto*, the Court of Appeal held in pertinent part:

11          Gatto's complaint relies entirely on
         allegations of the denial of full and equal

12          access to public accommodations guaranteed
         under section 51, subdivision (b) [of the

13          Civil Code] and free speech guaranteed under
         article I, section 2 of the California

14          Constitution, which Gatto seeks to enforce

15 _____

16 whether or not acting under color of law, interferes by threats,
intimidation, or coercion, or attempts to interfere by threats,

17 intimidation, or coercion, with the exercise or enjoyment by any
individual ... of rights secured by the Constitution or laws of the
United States, or the rights secured by the Constitution or laws of

18 this state ...."

19     [7]In their brief, these defendants refer to the "two-year"
statute of limitations set forth in CCP § 340.  However, Section

20 340 sets forth the one-year statute of limitations.  Because *Gatto*
also refers to the one-year statute of limitations applicable to

21 actions under Section 1983 as being the limitations applicable to
claims under Civil Code § 52.1, it is apparent that the reference

22 in the brief to CCP § 340 is a typographical error.  Effective
January 1, 2003, California Code of Civil Procedure § 335.1

23 provides for a two-year statute of limitations for "an action for
assault, battery, or injury to, or for the death of an individual

24 caused by the wrongful act or neglect of another."  For actions
under 42 U.S.C. § 1983, the Ninth Circuit applies the forum state's

25 statute of limitations for personal injury actions.  *Jonas v.
Blanas*, 393 F.3d 918, 927 (9th Cir.2004).  Therefore, the Abbate

26 Defendants should have referred to the two-year statute of
limitations set forth in CCP § 335.1.

under section 52.1.  As we have seen, the
first claim clearly derives from common law
principles and is for that reason subject to
the one-year statute.  The second is
analogous to a federal claim for personal
injury under 42 United States Code section
1983 which ... sounds in tort ... and this
claim is therefore also subject to the one-
year claim.

Plaintiffs argue that defendants' reliance on *Gatto* "is

wholly unjustified, since that case dealt with an application of

the Unruh Act, Civil Code § 51."  Plaintiffs contend that "this

is a case under the Bane Act, Civil Code § 52.1, and even a

cursory reading of the Third Cause of Action demonstrates that it

has nothing to do with any employment-type claims."

Plaintiffs have missed the point of the citation to *Gatto*.

*Gatto* expressly holds that a claim for relief under Civil Code §

52.1 is treated like a claim under Section 1983 and, therefore,

the statute of limitations applicable to a claim under Section

52.1 is California's statute of limitations for personal injury

actions, now a two-year statute of limitations.

The Abbate Defendants do not articulate why they believe

that the Third Cause of Action is time-barred, i.e., they do not

discuss accrual of this cause of action.  In their reply brief

they erroneously contend that the applicable statute of

limitations for a claim under Civil Code § 52.1 is one-year.

However, *Gatto* makes clear that the applicable statute of

limitations is now the two-year limitation period because of the

change in California law.  The Abbate Defendants' reply  refers

to the allegations in the Complaint concerning damages as a

35

result of leaving her employment.  The Third Cause of Action

pertains solely to Tiffany's arrest and prosecution.

The Abbate Defendants further contend that her claim of

false arrest in the Third Cause of Action is clearly time-barred

because the Complaint alleges that Tiffany was arrested on August

7, 2003.  As discussed above, the statute of limitations for a

claim under Section 52.1 is two years, arguably making the claim

in the Third Cause of Action based on false arrest in violation

of the Fourth Amendment and the California Constitution untimely.

Again, however, the Abbate Defendants do not discuss accrual.

On the face of the Complaint, the Second Cause of Action is

not time-barred.  The motion to dismiss is DENIED on this ground.

### c. **Limitation to Conduct Arising Out of Furnishing Goods, Services or Facilities**.

The Abbate Defendants seek dismissal of this cause of

action, contending that Civil Code § 52.1 is limited to conduct

arising out of the furnishing of goods, services or facilities to

clients, patrons or customers and does not apply to employment

discrimination.  *See Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d

493, 500 (1970).

The Third Cause of Action is not based on any allegations of

employment discrimination.  The Third Cause of Action alleges

Tiffany's "rights not to have her liberty restricted without

legal basis, to be arrested without probable cause, and to be

prosecuted maliciously without probable cause" and that these

defendants' "interference with these constitutional rights was

36

1   accomplished by means of force, coercion, and intimidation,

2   and/or the threat thereof."   Furthermore, the <u>Alcorn</u> decision was

3   brought pursuant to California Civil Code §§ 51 and 52, not

4   Section 52.1.   This ground for dismissal is without merit and the

5   motion is DENIED.

6            **d.   <u>Immunity Pursuant to California Civil Code §</u>**

7   **<u>47(b)</u>**.

8        The Abbate Defendants move to dismiss the Third Cause of

9   Action to the extent that this cause of action is based on their

10  participation in the criminal prosecution of Tiffany, on the

11  ground that dismissal is required because of the privilege set

12  forth in California Civil Code § 47(b).

13       Section 47(b) bars a civil action for damages based on

14  statements made in any judicial proceeding, in any official

15  proceeding authorized by law, or in the initiation or course of

16  any mandate-reviewable proceedings authorized by law.   The

17  litigation privilege provided in Section 47(b)  applies to any

18  communication (1) made in judicial or quasi-judicial proceedings;

19  (2) by litigants or other participants authorized by law; (3) to

20  achieve the objects of the litigation; and (4) that have some

21  connection or logical relation to the action.   *A.F. Brown Elec.*

22  *Contractor, Inc. v. Rhino Elec.*, 137 Cal.App.4th 1118, 1126

23  (2006).   Section 47(b) establishes an absolute privilege for such

24  statements and bars all tort causes of action based on them

25  except a cause of action for malicious prosecution.   *Hagberg v.*

26  *California Federal Bank*, 32 Cal.4th 350, 360 (2004).   "'Section

37

47 gives all persons the right to report crimes to the police,
the local prosecutor or an appropriate regulatory agency, even if
the report is made in bad faith.'" *Hagberg, id.* at 365.  "'[A]
communication concerning possible wrongdoing, made to an official
governmental agency such as a local police department, and which
communication is designed to prompt action by that entity is as
much a part of an "official proceeding" as a communication made
after an official investigation has commenced ... After all,
'[t]he policy underlying the privilege is to assure utmost
freedom of communication between citizens and public authorities
whose responsibility it is to investigate and remedy wrongdoing.'
... The importance of providing to citizens free and open access
to governmental agencies for the reporting of suspected criminal
activity outweighs the occasional harm that might befall a
defamed individual.  Thus the absolute privilege is essential."'"
*Id*. at 364-365.  Section 47(b)'s absolute privilege applies to
"communications intended to instigate official investigation into
[suspected] wrongdoing."  *Id*. at 369.  Statements made to prompt
an official investigation that may result in the initiation of
judicial proceedings also fall within the privilege set forth in
Section 47(b).  *Id*. at 361-36.

     Plaintiffs concede that "their defamation, and, perhaps,
some of their other state law claims arising from the defendants'
wrongful acts may be subject to dismissal" because of *Hagberg*.
However, plaintiffs argue, the absolute privilege set forth in
Section 47(b) does not affect the validity of the Third Cause of

Action to the extent that the Third Cause of Action is based on the violation of right protected by the United States Constitution.  Plaintiffs contend that "a state law litigation privilege cannot dictate the scope of a federal constitutional right."  In so arguing, plaintiffs refer to *Felder v. Casey*, 487 U.S. 131 (1988), wherein the Supreme Court held that Wisconsin's notice-of-claim statute was preempted with respect to any federal civil rights actions brought in state court.  In so holding, the Supreme Court stated: "Under the Supremacy Clause of the Federal Constitution, '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law must yield."  487 U.S. at 138.

Plaintiffs' argument does not make that much sense given the absolute witness privilege recognized by the Supreme Court in *Briscoe*.  In any event, the Third Cause of Action is based on a state, not federal, statute.  Therefore, plaintiffs' contention is not supported by *Felder*.

The Third Cause of Action is DISMISSED WITH LEAVE TO AMEND as barred by Section 47(b) immunity.

### 4.  Fourth Cause of Action for False Arrest.

The Abbate Defendants move to dismiss this cause of action for false arrest under California law on two grounds.

### a.  Statute of Limitations.

The Abbate Defendants move for dismissal on the ground that

it is barred by the one-year statute of limitations set forth in California Code of Civil Procedure § 340(c)(providing a one-year limitation period for "false imprisonment").  Because the Complaint alleges that Tiffany was "booked ... on August 7, 2003", the Abbate Defendants argue that this cause of action is time-barred.

In opposition, plaintiffs contend that the Fourth Cause of Action is not time-barred because the claim for false arrest does not accrue until she was acquitted of the criminal charges.

However, all of the cases cited by plaintiffs involve claims of malicious prosecution.  In *Mohlmann v. City of Burbank*, 179 Cal.App.3d 1037, 1041 n.1 (1986), it was stated:

> A cause of action for false arrest accrues on the arrest and is actionable immediately. There is no requirement that the arrestee allege favorable termination of the criminal proceedings (*Collins v. Owens* (1947) 77 Cal.App.2d 713, 716) ... *Cf.* malicious prosecution on account of criminal matters which requires the plaintiff to *allege* as well as prove that the criminal proceedings ended in acquittal or dismissal for lack of evidence. (*Jaffe v. Stone*, (1941) 18 Cal.2d 146 ....)

Therefore, the Fourth Cause of Action is time-barred to the extent that it alleges false arrest under California common law. This claim is DISMISSED WITH LEAVE TO AMEND.

### b.   <u>Lack of Factual Allegations</u>.

The Abbate Defendants also move for dismissal on the ground that there are no allegations in the Complaint that the Abbate Defendants actually arrested Tiffany or had any personal

40

1   involvement in her arrest.

2       Because plaintiffs are given leave to amend the allegations

3   of joint action and/or conspiracy, dismissal of the Fourth Cause

4   of Action also is GRANTED WITH LEAVE TO AMEND.

5           **5.  Fifth Cause of Action for Malicious Prosecution**.

6       The Abbate Defendants move to dismiss the Fifth Cause of

7   Action for malicious prosecution on the ground that the District

8   Attorneys Office conducted an independent investigation of the

9   Abbate Defendants' charges, which the Abbate Defendants contend

10  is an intervening act that cuts off any liability on their part

11  for malicious prosecution.  The Abbate Defendants refer to cases

12  holding that independent investigations leading to the bringing

13  of charges by the California State Bar or the Board of Medical

14  Quality Assurance negates a claim of malicious prosecution

15  against the person who made the complaint to the State Bar or

16  Board of Medical Quality Assurance.  *See Hogan v. Valley*

17  *Hospital*, 147 Cal.App.3d 119, 124-125 (1983); *Stanwhck v. Horne*,

18  146 Cal.App.3d 450, 462 (1983).  The Abbate Defendants contend

19  that "on its face, the complaint alleges substantial intervening

20  acts by the very law enforcement authority charged with

21  investigating and prosecuting crimes and their retained experts,

22  the Cassabon defendants."

23      Plaintiffs respond that a fair reading of the allegations of

24  the Complaint demonstrates that plaintiffs are alleging that "an

25  unseemly alliance at all times existed between the various camps

26  of defendants."  Plaintiffs refer to *Sheldon Appel Co. v. Albert*

*& Oliker*, 47 Cal.3d 863, 871 (1989):

> Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's favor ...; (2) was brought without probable cause ...; and (3) was initiated with malice ....'

Plaintiffs argue that the allegations of the Complaint satisfy these requirements for purposes of the motion to dismiss.[8]

The allegations of the Complaint do not conclusively establish as a matter of law that an intervening independent investigation negates this cause of action against the Abbate Defendants and the motion to dismiss is DENIED.

**6.   <u>Sixth Cause of Action for Negligence</u>.**

The Sixth Cause of Action for negligence alleges that the

---

[8]Plaintiffs also refer to *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir.2004), wherein the Ninth Circuit, addressing a claim of malicious prosecution in violation of Section 1983, held:

> Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and, thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings ... However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.

Abbate Defendants "had a duty to engage in the reasonable reporting of suspected crimes, avoiding false reports of crimes ...."

### a.  Privilege.

The Abbate Defendants argue that this cause of action fails in the face of the absolute immunity set forth in Civil Code § 47(b).  *See discussion supra.*

Plaintiffs respond that the Abbate Defendants "seek to rewrite the plaintiffs' Complaint to suit their legal arguments" and that "[n]o legal authority has been offered in support of this argument ...."

However, as discussed above, Hagberg appears to extend the absolute privilege set forth in Civil Code § 47(b) to the reporting of criminal conduct "even if the report is made in bad faith."

Therefore, dismissal is GRANTED WITH LEAVE TO AMEND.

### b.  Standing of Plaintiffs Virgil and Debra Fenters.

The only claim asserted by plaintiffs Virgil and Debra Fenters is the Sixth Cause of Action for negligence.

The Abbate Defendants move to dismiss their claim on the ground that the Abbate Defendants had no duty as a matter of law running to the Fenters and, therefore, the Fenters have no "standing" to bring this claim.

Plaintiffs admitted at the hearing that Tiffany was not a minor at the time of her arrest and prosecution.  Plaintiffs

represent that the Abbate Defendants knew that Tiffany lived with her parents and was still their dependant and request leave to amend to so allege.

The Sixth Cause of Action is DISMISSED WITH LEAVE TO AMEND.

**7.   Seventh Cause of Action for Intentional Infliction of Emotional Distress.**

The Abbate Defendants, noting that the Seventh Cause of Action alleges that their actions "resulted in Tiffany being "wrongfully detained, arrested and prosecuted without probable cause or other legal basis ... and ... were done in disregard of the probability of their causing plaintiff emotional distress", move for dismissal of this cause of action on the ground that the alleged acts of misconduct "fails to allege claims upon which relief may be granted", that the false arrest claim is time-barred, and that the Abbate Defendants "cannot be held liable for the subsequent prosecution since they are protected by the application of he [sic] federal absolute witness immunity and the state immunity conferred by Civil Code section 47(b)."

Plaintiffs admit that the Seventh Cause of Action is probably redundant as emotional distress damages are included within Section 1983 relief.  The motion to dismiss is GRANTED WITH LEAVE TO AMEND to amplify extreme and outrageous conduct.

**8.   Eighth Cause of Action for Negligent Infliction of Emotional Distress.**

Citing *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588 (1989) that negligent infliction of

emotional distress is not an independent tort but the tort of negligence, the Abbate Defendants argue that this cause of action should be dismissed.

Plaintiffs conceded dismissal of this cause of action at the hearing.  Therefore, the Eighth Cause of Action is DISMISSED WITH PREJUDICE.

**9.   Ninth Cause of Action for Violation of 29 U.S.C. § 201 et seq.**

The Abbate Defendants, contending that the Fair Labor Standards Act of 1938 occupies more that two volumes of the United States Code, argues that this cause of action requires them to speculate as to the legal basis upon which Tiffany relies in claiming liability.  The Abbate Defendants assert that Tiffany should be ordered to specify what sections of the Fair Labor Standards Act of 1938 she is relying upon in support of the Ninth Cause of Action.

The conduct alleged by Tiffany as violating the Fair Labor Standards Act of 1938 is clearly alleged.  The motion to dismiss is DENIED.

**10.   Tenth Cause of Action for Violation of 29 U.S.C. §§ 215 and 216.**

The Abbate Defendants move to dismiss this cause of action on two grounds.

**a.   Failure to Allege Interstate Commerce.**

The Abbate Defendants move to dismiss this cause of action on the ground that Tiffany has not alleged she was engaged in

1    interstate commerce while she was employed by Yosemite Chevron

2    and, therefore, the Fair Labor Standards Act has no application

3    to the "instant dispute".

4         Plaintiffs respond by noting that the Abbate Defendants "do

5    not cite a single case requiring that the interstate commerce

6    requirement must be specifically pleaded, as opposed to merely

7    invoking the statute and its language, consistent with FRCP 8."

8         A claim must allege each element.  The Tenth Cause of Action

9    is DISMISSED WITH LEAVE TO AMEND.

10                    **b.   <u>No Private Right of Action</u>**.

11        The Abbate Defendants, referring to 29 U.S.C. § 215(a)(3),

12   making it unlawful "to discharge or in any other manner

13   discriminate against any employee because such employee has filed

14   any complaint or instituted or caused to be instituted any

15   proceeding under or related to this chapter ...", move to dismiss

16   the Tenth Cause of Action on the ground that Section 215(a)(3)

17   does not provide a private right of action.

18        No authority for this proposition is cited by the Abbate

19   Defendants.

20        29 U.S.C. § 216(b) provides in pertinent part:

21             ... Any employer who violates the provisions
               of section 215(a)(3) of this title shall be
22             liable for such legal or equitable relief as
               may be appropriate to effectuate the purposes
23             of section 215(a)(3) of this title, including
               without limitation employment, reinstatement,
24             promotion, and the payment of wages lost and
               an additional amount as liquidated damages.
25             An action to recover the liability prescribed
               in either of the preceding sentences may be
26             maintained against any employer ... in any

                                  46

Federal or State court of competent
jurisdiction by any one or more employees for
and in behalf of himself or themselves and
other employees similarly situated. No
employee shall be a party plaintiff to any
such action unless he gives his consent in
writing to become such a party and such
consent is filed in the court in which such
action is brought ... The right provided by
this subsection to bring an action by or on
behalf of any employee, and the right of any
employee to become a party plaintiff to any
such action, shall terminate upon the filing
of a complaint by the Secretary of Labor in
an action under Section 217 of this title
....

*See also Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1335

(11th Cir.2002)("The plain language of § 216(b), which provides a

private right of action to employees to seek legal or equitable

relief for an employer's violation of the antiretaliation

provision, mandates that [an employee may obtain injunctive

relief for violations of the FLSA's antiretaliation provision].")

Therefore, the contention that Tiffany has no private right

of action is without without merit and the motion to dismiss is

DENIED.

### c.   Failure to Allege Reporting to Appropriate Authorities.

The Abbate Defendants further move for dismissal of the

Tenth Cause of Action on the ground that the Complaint does not

allege that Tiffany reported the Abbate Defendants for the

alleged retaliation "because such employee has filed any

complaint or instituted or caused to be instituted any proceeding

under or related to this chapter ..."  The Abbate Defendants

47

assert that Tiffany "did not file an EEOC or DEFH complaint, nor did she file a complaint with the State Labor Board Commission."

This ground for dismissal is without merit.  *Lambert v. Ackerley*, 180 F.3d 997, 1002-1008 (9ᵗʰ Cir.1999), *cert. denied*, 528 U.S. 1116 (2000), rejected the position that the antiretaliation provision of Section 215(a)(3) extends only to those employees who filed formal proceedings with the Department of Labor, holding that "§ 215(a)(3) protects from retaliation employees who complain to their employer about alleged violations of the Act."  Therefore, dismissal of the Tenth Cause of Action on this ground is DENIED.

**11.  Eleventh Cause of Action for Violation of California Labor Code §§ 98.6, 232.5, and 1102.5**.

The Abbate Defendants move to dismiss any claim for relief under these provisions on the grounds that the Complaint does not allege that Tiffany ever made a claim to any governmental body regarding the working conditions at Yosemite Chevron ,that she was discharged or discriminated against because she made such a complaint pursuant to Labor Code § 98.6 and that Labor Code § 232.5 does not confer a private right of action on an aggrieved employee.[9]

---

[9]The Abbate Defendants also argue that Labor Code § 1102.5 does not provide a private right of action except to corporations and limited liability companies. The Abbate Defendants have misread Section 1102.5(f).  Section 1102.5(f) does not provide a private right of action but rather, imposes additional penalties for violation of the described provisions on corporations and limited liability companies.  Therefore, this ground for dismissal is without merit.

1       Plaintiffs merely respond that defendants "do not cite any

2  cases indicating that plaintiffs' California Labor Code claims

3  have to be specifically pleaded."

4       Labor Code § 98.6 provides in pertinent part:

5              (a) No person shall discharge an employee or
               in any manner discriminate against any
6              employee ... because the employee ... has
               filed a bona fide complaint or claim or
7              caused to be instituted any proceeding under
               or relating to his or her rights, which are
8              under the jurisdiction of the Labor
               Commissioner, or because the employee has
9              initiated any action or notice pursuant to
               Section 2699, or has testified or is about to
10             testify in any such proceeding or because of
               the exercise by the employee .. on behalf of
11             himself, herself, or others of any rights
               afforded him or her.

12
               (b) Any employee who is discharged,
13             threatened with discharge, demoted,
               suspended, or in any other manner
14             discriminated against in the terms and
               conditions of his or her employment ...
15             because the employee has made a bona fide
               complaint or claim to the division pursuant
16             to this part, or because the employee has
               initiated any action or notice pursuant to
17             Section 2699 shall be entitled to
               reinstatement and reimbursement for lost
18             wages and work benefits caused by those
               actions of the employer. ....

19
   Labor Code § 232.5 provides in pertinent part:
20
               No employer may do any of the following:
21
               (a) Require, as a condition of employment,
22             that an employee refrain from disclosing
               information about the employer's working
23             conditions.

24             (b) Require an employee to sign a waiver or
               other document that purports to deny the
25             employee the right to disclose information
               about the employer's working conditions.

26

                                49

1     (c) Discharge, formally discipline, or
otherwise discriminate against an employee
2     who discloses information about the
employer's working conditions.

3

Labor Code § 1102.5 provides in pertinent part:

4

     (a) An employer may not make, adopt, or
5     enforce any rule, regulation, or policy
preventing an employee from disclosing
6     information to a govenment or law enforcement
agency, where the employee has reasonable
7     cause to believe that the information
discloses a violation of state or federal
8     statute, or a violation or noncompliance with
state or federal rule or regulation.

9

     (b) An employer may not retaliate against an
10     employee for disclosing information to a
government or law enforcement agency, where
11     the employee has reasonable cause to believe
that the information discloses a violation of
12     state or federal statute, or a violation or
noncompliance with a state or federal rule or
13     regulation.

14     (c) An employer may not retaliate against an
employee for refusing to participate in an
15     activity that would result in a violation of
state or federal statute, or a violation or
16     noncompliance with a state or federal rule or
regulation.

17

     (d) An employer may not retaliate against an
18     employee for having exercised his or her
rights under subdivision (a), (b), or (c) in
19     any former employment.

20     ...

21     (f) In addition to other penalties, an
employer that is a corporation or limited
22     liability company is liable for a civil
penalty not exceeding ten thousand dollars
23     ($10,000) for each violation of this section.

24   In *Neveu v. City of Fresno*, 392 F.Supp.2d 1159

25 (E.D.Cal.2000),  defendants' argument that a federal court lacks

26 jurisdiction to hear a plaintiff's claim for violation of Labor

Code § 1102.5 because, pursuant to Labor Code §§ 98.6 and 98.7,

claims under Section 1102.5 are solely with the province of the

Labor Commissioner was sustained:

> Cal. Labor Code § 98.7 provides that '[a]ny
> person who believes that he or she has been
> discharged or otherwise discriminated against
> in violation of any law under the
> jurisdiction of the Labor Commissioner may
> file a complaint with the division within six
> months after the occurrence of the
> violation.'  Cal. Labor Code § 98.6(a)
> describes claims brought pursuant to various
> sections of the labor code, including §
> 1102.5, as brought 'under the jurisdiction of
> the labor Commissioner [sic].'  Neither of
> the provisions Defendants cite provides that
> *exclusive* jurisdiction over § 1102.5 claims
> lies with the Labor Commissioner.  Defendants
> argue that Plaintiff cites no cases allowing
> a court to hear a claim under § 1102.5.
> Defendants also cite no cases holding that
> the Labor Commissioner has exclusive
> jurisdiction over § 1102.5 claims and that a
> court is *not* allowed to hear a § 1102.5
> claim.
>
> The California Supreme Court has recently
> held that a litigant seeking damages under §
> 1102.5 is required to exhaust administrative
> remedies before the Labor Commissioner prior
> to bringing suit.  *Campbell v. Regents of the
> Univ. of Cal.,* 35 Cal.4th 311, 333-4 ...
> (2005)('We conclude that absent a clear
> indication of legislative intent, we should
> refrain from inferring a statutory exemption
> from our settled rule requiring exhaustion of
> administrative remedies.').  The exhaustion
> of administrative remedies rule is 'well
> established in California jurisprudence.'
> *Id.* at 321 ... '"[T]he rules is that where an
> administrative remedy is provided by statute,
> relief must be sought from the administrative
> body and this remedy exhausted before the
> courts will act."' *Id.* ... 'Exhaustion of
> administrative remedies is a jurisdictional
> prerequisite to resort to the courts.'  *Id.*
> ....

1                  Plaintiff does not allege that he exhausted
available administrative remedies, including
2                  bringing a complaint before the Labor
Commissioner, before bringing suit.

3

                  Defendants' Motion to Dismiss Plaintiff's
4                  claim under Cal. Labor Code § 1102.5 is
**GRANTED** on the grounds that there is no
5                  jurisdiction.

6  392 F.Supp.2d at 1180.

7      *Campbell* and *Neveu* support the grounds for dismissal of the

8  Eleventh Cause of Action argued by the Abbate Defendants, albeit

9  on a slightly different basis.  Although no case could be located

10  discussing the existence of a private right of action under Labor

11  Code §§ 98.6 and 1102.5, the requirement of exhaustion of

12  administrative remedies implies that such a right exists.

13  However, as argued by the Abbate Defendants, the Complaint does

14  not allege that Tiffany made any complaint to the Labor

15  Commissioner.  Plaintiffs admitted at the hearing that no such

16  complaint has been made.

17      Therefore, the Eleventh Cause of Action is DISMISSED WITH

18  PREJUDICE.

19             **12.**   **Thirteenth Cause of Action for Quantum Meruit**.

20      The Abbate Defendants move to dismiss the Thirteenth Cause

21  of Action as barred by the two-year statute of limitations set

22  forth in California Code of Civil Procedure § 339 applicable to

23  claims of quantum meruit.  *See Iverson, Yoakum, Papiano & Hatch*

24  *v. Berwald*, 76 Cal.App.4th 990, 996 (1990), citing *Parker v.*

25  *Solomon*, 171 Cal.App.2d 125, 134 (1959).  Because the Complaint

26  alleges that Tiffany left her employment with Yosemite Chevron on

March 23, 2003, the Abbate Defendants contend that she had until

March 23, 2005 to bring a claim for overtime and other

compensation in quantum meruit.   The claim is time-barred.

The Thirteenth Cause of Action is DISMISSED WITH PREJUDICE.

### 13.   **Fourteenth Cause of Action for Defamation**.

The Abbate Defendants move to dismiss this cause of action

on the grounds that it is barred by the absolute litigation

privilege set forth in California Civil Code § 47(b) and that the

cause of action is barred by the one-year statute of limitations

set forth in California Code of Civil Procedure § 340(c).

As discussed *supra* in connection with the Third Cause of

Action, plaintiffs concede that "their defamation, and, perhaps,

some of their other state law claims arising from the defendants'

wrongful acts may be subject to dismissal" because of *Hagberg*.

Plaintiffs do not respond to the contention that the Fourteenth

Cause of Action is time-barred.

The Fourteenth Cause of Action is DISMISSED WITH PREJUDICE.

### D.   **Motion to Dismiss by the Cassabon Defendants**.

The Cassabon Defendants move to dismiss the causes of action

alleged against them for failure to state a claim upon which

relief can be granted.

Plaintiffs' entire opposition to this motion to dismiss is

as follows: "The Cassabon Defendants do not raise any claims not

addressed herein above, and plaintiffs request and fully expect

that the Court will rule likewise on those claims as to all

parties."

1          **1.  Absolute Litigation Privilege Bars Fourth, Sixth,**

2  **Seventh, Eighth and Fourteenth Causes of Action**.

3       The Cassabon Defendants move to dismiss the Fourth Cause of

4  Action for false arrest, the Sixth Cause of Action for

5  negligence, the Seventh Cause of Action for intentional

6  inflication of emotional distress, the Eighth Cause of Action for

7  negligent infliction of emotional distress, and the Fourteenth

8  Cause of Action for defamation on the ground that plaintiffs are

9  precluded from bringing these causes of action because of the

10  absolute litigation privilege set forth in California Civil Code

11  § 47(b).  *See discussion supra*.  This privilege applies to

12  communications of experts retained by a party to the litigation.

13  *See Carden v. Getzoff*, 190 Cal.App.3d 907, 913-914 (1987); *ITT*

14  *Telecom Products Corp. v. Dooley*, 214 Cal.App.3d 307, 316-317

15  (1989).

16       As noted, plaintiffs conceded in their opposition to the

17  Abbate Defendants' motion to dismiss that "their defamation, and,

18  perhaps, some of their other state law claims arising from the

19  defendants' wrongful acts may be subject to dismissal".

20       All of the causes of action described in this section of the

21  Cassabon Defendants' motion to dismiss are dismissed because of

22  the absolute litigation privilege.  The only allegation against

23  the Cassabon Defendants is set forth in paragraph 29:

24              The false and baseless allegations of
                embezzlement against Tiffany were supported
25              by the accountant firm retained on behalf of
                the prosecution, Cassabon, and the
26              accountants from Cassabon specifically

1          assisting the prosecution, Fung and
           McIlhatton. These defendants disregarded all
2          of the above-outlined facts showing the
           embezzlement allegations to be baselenss and
3          incredible, as well as the professional
           standards that are supposed to be followed by
4          accountants engaged to provide litigation
           services.  As a result, these defendants
5          produced misleading, result-oriented reports
           that served to add a false air of legitimacy
6          to the embezzlement allegations.

7    These allegations demonstrate that the Cassabon Defendants are

8    entitled to the absolute litigation privilege of Section 47(b)

9    as interpreted and applied under California law.

10        The Fourth, Sixth, Seventh, Eighth and Fourteenth Causes of

11   Action are DISMISSED WITH PREJUDICE.[10]

12        **2.   First Cause of Action for Violation of 42 U.S.C. §**

13   **1983**.

14        The Cassabon Defendants move for dismissal of this cause of

15   action on the basis of the absolute witness immunity set forth in

16   *Briscoe v. LaHue, supra*, 460 U.S. at 326, and in *Franklin v.*

17   *Terr, supra*, 201 F.3d at 1101-1102.  *See discussion supra.*

18        The Cassabon Defendants are entitled to absolute witness

19   immunity to the extent that they testified at Tiffany's trial.

20        The Cassabon Defendants further argue that they are entitled

21   to absolute immunity from claims that they misinterpreted

22   evidence and prepared reports for use in the prosecution.  In so

23   arguing, defendants refer to *Gray v. Poole*, 275 F.3d 1113

24   _____

25        [10]Because of this ruling, it is not necessary to address the
     alternative grounds for dismissal of the Sixth, Seventh and Eighth
     Causes of Action and for dismissal of plaintiffs Virgil and Debra
26   Fenters asserted by the Cassabon Defendants.

1    (D.C.Cir.2002).

2        In *Gray*, a social worker submitted a statement to the court

3    in connection with a child neglect action.  The District of

4    Columbia Circuit held that Poole was entitled to absolute witness

5    immunity, concluding that "[i]t does not matter whether Poole's

6    sworn statement was given in oral or written form; what matters

7    is that her statement was the equivalent of sworn testimony in a

8    judicial proceeding."  275 F.3d at 1118.

9        These defendants also refer to *Morstad v. Dept. of*

10   *Corrections & Rehab.*, 147 F.3d 741, 744 (8th Cir.1998)("Because

11   the court directed Veenstra to evaluate Morstad and to testify at

12   Morstad's probation revocation hearing, we conclude that Veenstra

13   was performing functions essential to the judicial process ...

14   and affirm the district court's determination that Veenstra was

15   entitled to absolute immunity.") and to *Buckley v. Fitzsimmons*,

16   919 F.2d 1230 (7th Cir.1990), *reversed on other grounds*, 509 U.S.

17   259 (1993).  In *Buckley*, the Seventh Circuit addressed whether

18   three expert witnesses had absolute immunity for their pretrial

19   activities of evaluating the bootprint, writing reports,

20   discussing the case with prosecutors, and preparing to testify.

21   509 U.S. at 1244-1245.  The Seventh Circuit held:

22           ... We agree with the district court that
             they do.  *Briscoe* holds that the presentation
23           of testimony may not be the basis of
             liability, even if the witness deliberately
24           misleads the court.  It would be a hollow
             immunity if the aggrieved party could turn
25           around and say, in effect: 'True, you
             *delivery* of bad testimony is immunized, but
26           preparing to deliver that testimony is not,

so I can litigate the substance of your
testimony.'  Substance is exactly what
*Briscoe* puts off limits.

As expert could violate a suspect's rights
independently of the litigation.  The expert
might, for example, break into the suspect's
home to obtain samples for analysis.
Absolute immunity would not apply to that
theft, for the same reason it does not apply
to prosecutorial infliction of punishment
without trial.  A non-testimonial expert
could violate a suspect's rights by 'cooking'
a laboratory report in a way that misleads
the testimonial experts.  Experts, like the
police, 'cannot hide behind [the immunity of]
the officials whom they have defrauded.' ...
But nothing in the complaint suggests that
the three experts hid evidence, as opposing
to misinterpreting.

Discussions between the prosecutors and the
experts violated none of Buckley's rights.
Preparing to commit slander or perjury is not
actionable.  The testimony itself is covered
by immunity.  Buckley makes it clear that the
testimony is the real gravamen of his
complaint.  Olsen, he submits, 'wrongfully
changed his initial opinion'; Robbins was an
'utterly disreputable witness-for-hire.'
Maybe so, but cross-examination rather than a
suit for damages is the right way to
establish these things.  Junk science is a
plague of contemporary litigation, but the
peddlers of poorly supported theories do not
expose themselves to liability by doing
research out of court or appearing in more
than one case.

*White v. Frank*, 855 F.2d 956 (2nd Cir.1988)
holds that *Briscoe* does not apply to
'complaining witnesses'.  Buckley contends
that the three experts are in this category,
because but for their opinions the State's
Attorney would not have obtained an
indictment.  The parallel is not apt.  None
of the experts invented the report of a crime
or brought the fable to the state's
attention.  Jeanine Nicarico is dead.  Each
expert was brought into the case by the
prosecutors, who sought to evaluate the

strength of the evidence against Buckley.  We
therefore need not decide whether to follow
*White*.

919 F.2d at 1245.

The allegations in paragraph 29 fit with the holding of the

Seventh Circuit in *Buckley*.  There is no allegation in the

Complaint against the Cassabon Defendants or any other defendants

that they fabricated evidence or conspired to do so.  Absent such

allegations against the Cassabon Defendants, they are entitled to

absolute witness immunity.

The First Cause of Action is DISMISSED WITH LEAVE TO AMEND.

**3.   Second Cause of Action for Declaratory Relief**.

The Cassabon Defendants move to dismiss this cause of action

on the same basis as the County Defendants and the Abbate

Defendants.  *See discussion supra*.  For the reasons set forth

above, the Second Cause of Action is DISMISSED WITH LEAVE TO

AMEND.[11]

**4.   Third Cause of Action for Violation of Civil Code §
52.1**.

The Cassabon Defendants move to dismiss this cause of action

on two grounds.

**a.   Availability of Damages**.

The Third Cause of Action alleges that Tiffany is entitled

to actual damages and to "an award of as much as three times that

_____

[11]Because of the rulings in this Order, the Cassabon
Defendants' motion for more definite statement is denied as
unnecessary.

58

1  amount."

2       The Cassabon Defendants move for dismissal on the ground

3  that damages are not an available remedy under Civil Code § 52.1.

4  In so moving, they refer to cases holding that there is no cause

5  of action for damages under Article I of the California

6  Constitution (due process and equal protection and free speech)

7  in the absence of a statutory provision or an established common

8  law tort authorizing such a damage remedy for the constitutional

9  violation.  *See Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th

10  300, 307 (2002); *Degrassi v. Cook*, 29 Cal.4th 333 (2002); *Ley v.*

11  *State of California*, 114 Cal.App.4th 1287, 1306-1307 (2004).  The

12  Cassabon Defendants assert that plaintiffs cannot use Civil Code

13  § 52.1 "to circumvent the law that no damages can be assessed for

14  a violation of Article I of the California Constitution."

15       Defendants' position is without merit.  The cases upon which

16  they rely do not involve a claim for damages under the Civil Code

17  but rather, a claim for damages directly under the California

18  Constitution.  Dismissal on this ground for dismissal is DENIED.

19                     **b.  <u>Speech</u>.**

20       The Cassabon Defendants move for dismissal of the Third

21  Cause of Action, referring to Civil Code § 52.1(j):

22            Speech alone is not sufficient to support an
            action brought pursuant to subdivision (a) or
23            (b), except upon a showing that the speech
            itself threatens violence against a specific
24            person or group of persons; and the person or
            group of persons against whom the threat is
25            directed reasonably fears that, because of
            the speech, violence will be committed
26            against them or their property and that the

person threatening violence has the apparent
ability to carry out the threat.

The Cassabon Defendants contend that "Plaintiffs claim that the
Cassabon Defendants speech caused the violation."

Because leave to amend is granted with respect to
plaintiffs' claims of joint action and/or conspiracy, dismissal
on this ground is DENIED WITHOUT PREJUDICE to its renewal
following the filing of the First Amended Complaint.

### 5.   <u>Fifth Cause of Action for Malicious Prosecution</u>.

The Cassabon Defendants move for dismissal of this cause of
action on the ground that one of the elements of a cause of
action for malicious prosecution is that the prior action "was
commenced by or at the direction of the defendant." *Sheldon
Appel Co. v. Albert & Oliker*, *supra,* 47 Cal.3d at 871.  the
Cassabon Defendants contend:

Plaintiffs have not alleged, nor could they
in good faith allege, that the Cassabon
Defendants commenced the prior criminal
action or directed the underlying action be
filed.  To the contrary, Plaintiffs allege
that the Cassabon Defendants were retained
after Ms. Fenters was charged with
embezzlement on June 23, 2003.

At the hearing, plaintiffs stated that the cause of action
against the Cassabon Defendants is based on the theory described
in *Jacques Interiors v. Petrak*, 188 Cal.App.3d 1363 (1987).

*Petrak* involved an action for malicious prosecution against
an insurance adjuster (Petrak) by a commercial tenant (Jacques)
sued for subrogation by the insurer of the building (Sentry), who
as also Petrak's employer, after the building was damaged by

fire.  In rejecting Petrak's argument that he could not be liable

for malicious prosecution because the suit was filed after

Sentry's attorney, McCaskey, had conducted his own investigation,

the Court of Appeal noted:

> 'One may be civilly liable for malicious
> prosecution without personally signing the
> complaint initiating the ... proceeding.  If
> a person, without probable cause and with
> malice, instigates or procures the [action],
> he is liable.' ... '"[I]t is enough if [the
> defendant] was instrumental in setting the
> law in motion and caused the [action] to
> proceed." ...' ... '[T]he test of liability
> in an action for malicious prosecution is:
> Was defendant actively instrumental ... [or]
> the proximate and efficient cause of
> maliciously putting the law in motion[?] ....

188 Cal.App.3d at 1371-1372.  *See also Lujan v. Gordon*, 70

Cal.App.3d 260, 264 (1977)("There does not appear to be any good

reason not to impose liability upon a person who inflicts harm by

aiding or abetting a malicious prosecution which someone else has

prosecuted."); *Zamos v. Stroud*, 32 Cal.4th 958 (2004)(attorney

may be held liable for malicious prosecution for continuing to

prosecute a lawsuit discovered to lack probable cause).

Because plaintiffs did not cite *Petrak* until the hearing and

because the allegations supporting the claimed joint action

and/or conspiracy will be amended, dismissal is GRANTED WITH

LEAVE TO AMEND.[12]

///

---

[12]In granting leave to amend, no opinion is expressed about the
viability of plaintiffs' theory of relief against the Cassabon
Defendants.

1    ACCORDINGLY, as set forth above:

2    1.  The motion to dismiss filed by the County of Merced,

3  Gordon Spencer, Marc Bacciarini, and Merle Wayne Hutton is

4  GRANTED IN PART AND DENIED IN PART;

5    2.  The motion to dismiss filed by Abbco Investments, LLC

6  dba Yosemite Chevron, Robert Abbate, James Abbate and John Abbate

7  is GRANTED IN PART AND DENIED IN PART;

8    3.  The motion to dismiss filed by Victor Fung, Erin

9  McIlhatton, and Cassabon & Associates, LLP is GRANTED IN PART AND

10  DENIED IN PART;

11    4.   Plaintiffs shall file a First Amended Complaint in

12  accordance with the rulings made herein within 20 days of service

13  of this Order.  Defendants shall respond within 20 days

14  thereafter.

15    Dated: _July 14___, 2006

16

17                              /s/ OLIVER W. WANGER_____

18                                   OLIVER W. WANGER

19                              UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26