IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TIFFANY FENTERS, | ) | No. CV-F-05-1630 OWW/DLB |
| | ) | |
| | ) | ORDER DENYING THE CASSABON |
| | ) | DEFENDANTS' MOTION TO |
| Plaintiff, | ) | DISMISS THE FIRST, THIRD AND |
| | ) | FOURTH CAUSES OF ACTION IN |
| vs. | ) | THE FIRST AMENDED COMPLAINT |
| | ) | (Doc. 75) AND DENYING THE |
| | ) | ABBATE DEFENDANTS' MOTION TO |
| YOSEMITE CHEVRON, et al., | ) | DISMISS THE FIRST, THIRD AND |
| | ) | FOURTH CAUSES OF ACTION IN |
| | ) | THE FIRST AMENDED COMPLAINT |
| Defendant. | ) | (Docs. 78) |
| | ) | |
| | ) | |

By Order filed on July 14, 2006 (hereinafter referred to as the July 14 Order), plaintiff Tiffany Fenters (Tiffany) was ordered to file a First Amended Complaint.

In the First Amended Complaint (FAC), Tiffany names as defendants Yosemite Chevron, Abbco Investments, LLC, and Robert Abbate (the Abbate Defendants); Gordon Spencer, former District Attorney for the County of Merced, Merle Wayne Hutton, Supervising Investigator for the District Attorney's Office for

1

Merced County, and Merced County (the Merced County Defendants); and Victor K. Fung, CPA, Erin M. McIlhatton, CPA, and Cassabon & Associates (the Cassabon Defendants).  The FAC alleges that the Abbate Defendants and the Cassabon Defendants are "liable under federal law based on the joint activity and/or conspiracy [they] engaged in ... with individuals action under color of law and within the course and scope of their duties."

The Cassabon Defendants and the Abbate Defendants move to dismiss the First, Third and Fourth Causes of Action pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

**A.   <u>Relevant Allegations in FAC</u>.**

The FAC alleges that Tiffany was hired by Yosemite Chevron on June 6, 2002 as a cashier/stock clerk; that Tiffany was instructed to balance the cash register and clear the register of any cash in excess of $150 at the end of her shift; that, shortly after beginning her employment, she and other employees were required, as a condition of continued employment, to reimburse Yosemite Chevron for funds lost as a result of "drive-offs" where customers did not pay in advance and drove off without payment; that Tiffany was not being paid extra for overtime worked; that another Yosemite Chevron employee expressed inappropriate and unwelcome sexual interest in Tiffany; that when Tiffany brought this to Abbate's and Yosemite Chevron's management, no effective remedial action was taken; that other inappropriate conduct occurred at Yosemite Chevron, including theft and drug dealing;

that Tiffany complained about being required to reimburse

Yosemite Chevron for "drive-offs" and other defalcations, not

being paid overtime, being forced to work overtime against her

will, being sexually harassed, workplace theft, and working in a

place where drugs were being used; that Tiffany left her

employment with Yosemite Chevron on March 26, 2003 because of

this ongoing pattern of illegal activity and misconduct; that

Tiffany was forced to return to Yosemite Chevron without

compensation to put her decision to quit in writing; and that

Tiffany was not paid all of the compensation to which she was

then legally entitled.   The FAC then alleges:

> 23.  In connection with Tiffany's separation
> from employment in March 2003, Abbate went to
> the Office of the District Attorney for the
> County of Merced and met with Spencer and
> Hutton in an effort to get false and
> fabricated charges of embezzlement filed
> against Tiffany.  Indeed, neither Abbate nor
> anyone else at Yosemite Chevron had even
> suspected or accused Tiffany of any dishonest
> activity during her employment, and Abbate
> never reported any loss based on Tiffany's
> activities to his insurance, because,
> plaintiff is informed and believes, such
> losses did not occur and could not be
> credibly documented.  Tiffany is informed and
> believes that Abbate took this step as a
> 'preemptive strike' against her as an ex-
> employee he anticipated might take legal
> action.  Tiffany is further informed and
> believes that during the period of April, May
> and June 2003, Hutton headed a result-
> oriented investigation into Abbate's and
> Yosemite Chevron's false and fabricated
> allegations at their behest and at Spencer's
> and Abbate's direction.  Plaintiff is further
> informed and believes that Hutton, Spencer
> and Abbate participated in this
> 'investigation.'

24.  The following facts are now apparent concerning the specifics of the false and fabricated investigation undertaken by the defendants.  Abbate, with the assistance and advice of Hutton, Spencer, and other defendants, fabricated and manipulated Yosemite Chevron business records to support his baseless allegations.  Abbate, Hutton, Spencer, and other defendants also downplayed and distorted the fact that Yosemite Chevron at all times had a video surveillance system that would have depicted an employee taking cash from the store register and, indeed, had in the past provided the evidence that led to Wilson's ultimate firing for stealing a lottery ticket.  Nor surprisingly, no videotapes depicting Tiffany engaging in any dishonest activity were ever disclosed. Abbate also acted as an investigator on his own case, and, on or about June 4, 2003 interviewed another Yosemite Chevron employee, Alejandro Aceves ..., with Hutton initially surreptitiously observing.  During that interview, Abbate and Hutton, at Spencer's direction, coerced Aceves into saying that Tiffany had taught him how to steal from Yosemite Chevron, a fact not disclosed by any of the defendants until Aceves admitted it in open court during Tiffany's criminal trial.  Even further, Abbate and Hutton, at Spencer's direction, promised Aceves consideration for falsely implicating Tiffany.  Overall, it took Abbate, Hutton, Spencer and other defendants approximately three months to 'make' a case against Tiffany that could be filed.

25.  Abbate directed his false and fabricated allegations to the Office of the District Attorney, instead of the Merced Police Department, the law enforcement agency with primary jurisdiction, because Abbate had a prior personal relationship with Spencer. Indeed, Spencer recently resigned his position in disgrace because of numerous scandals involving his misusing his official position for his personal interest and gain. Records indicate that Spencer directed and routed Abbate's and Yosemite Chevron's complaint not to the local law enforcement agency with primary jurisdiction, as would

4

typically be the case, but instead to Hutton, a supervising investigator from his office. Moreover, in conducting, along with Abbate, the false and fabricated investigation, Hutton acted at all times at Spencer's direction.

26.  On June 23, 2003, Tiffany was charged with embezzlement in violation of California Penal Code § 503.  Tiffany was booked on these charges on August 7, 2003.  The allegations underlying this baseless and fabricated criminal proceeding were that Tiffany embezzled sums herself and also instructed and advised Aceves on how to embezzle funds from Yosemite Avenue Chevron. Indeed, it was alleged that Tiffany was personally responsible for embezzling in excess of $12,000 and that Aceves was responsible for embezzling in excess of $19,000.  In Merced County, it is not uncommon for those convicted of embezzlement to be incarcerated upon conviction, and Tiffany was apprized of this fact at the outset of the criminal proceedings.

27.  The allegations against Tiffany in this regard are completely without any reliable evidentiary support and are contrary to the truth.  Over the period of time where this embezzlement activity is alleged to have occurred, there is no corresponding drop in income or inventory at Yosemite Chevron. Also, there were regular, if not daily, checks of the register and inventory for the purposes of determining if employees were obligated to reimburse Yosemite Chevron, and none of these checks indicated losses consistent with the embezzlement allegations, which would have required Tiffany to have made away with hundreds of dollars per shift. Moreover, contrary to what was alleged, there was no indication that Tiffany was responsible for any of the alleged suspicious activity, since several employees work any given shift and are each able to tend the register at various times.  Additionally, Yosemite Chevron's systems of controls make its records and the allegations of embezzlement highly suspect.  Even further, there was absolutely no indication that

5

Tiffany was ever reported during the subject time period as having any unexplained amounts of cash or suspicious property.

28.  The false, fabricated and baseless allegations of embezzlement against Tiffany were supported by the accountant firm retained on behalf of the prosecution, Cassabon, and the accountants from Cassabon specifically assisting the prosecution, Fung and McIlhatton.  These defendants were brought into this criminal prosecution after the judge who presided over the preliminary examination had expressed doubt and criticism regarding the lack of any objective financial evidence that Tiffany had committed a crime. Even further, it was represented that the Office of the District Attorney was not ready for trial and required a substantial continuance in order to consult with these defendants, so that it might continue proceeding with its case against Tiffany. However, instead of making a serious, objective inquiry into the issues they were retained to examine, these defendants disregarded all of the above-outlined facts showing the embezzlement allegations to be baseless and incredible, as well as the professional standards that are supposed to be followed by accountants engaged to provide litigation services.  As a result, these defendants produced misleading, result-oriented reports that served to add a false air of legitimacy to the embezzlement charges and which permitted said charges to proceed to trial.

29.  As a result of the defendants' wrongful acts, Tiffany was forced to defend herself against these baseless allegations for an extended period of time, all the way up to trial.  Spencer attended a hearing in this criminal proceeding on January 5, 2004 and acknowledged on that date that he had a personal relationship with Abbate.  Moreover, despite Tiffany's lack of a criminal history and the relatively small amount of alleged loss, this criminal proceeding received 'special attention' and a felony resolution was always demanded at Spencer's insistence. Also, despite any credible incriminating

6

facts or evidence, the prosecution persisted
in pursuing a felony conviction at Spencer's
instruction.

30.  Trial commenced on September 27, 2005.
On October 13, 2005, plaintiff was acquitted
by a Merced County jury.  From the time that
the case was submitted to the jury until the
verdict, only two and one-half hours elapsed.

The FAC alleges a First Cause of Action pursuant to 42

U.S.C. § 1983 against all defendants, alleging in pertinent part:

34.  The defendants' intentional and reckless
acts, as described above, constitute a
deprivation of Tiffany's ... rights under the
Fourth Amendment not to have her liberty
restricted without legal basis, to be
arrested without probable cause, and not to
be prosecuted maliciously without probable
cause.  With respect to these constitutional
violations, as alleged hereinabove,
defendants Yosemite Chevron, Abbco, Abbate,
Fung, McIlhatton, and Cassabon were acting in
joint activity with and/or conspiring with
Spencer and Hutton.

The Third Cause of Action is pursuant to California Civil

Code § 52.1 against the Abbate Defendants and the Cassabon

Defendants and alleges in pertinent part:

45.  The defendants' intentional and reckless
acts, as described above, constitute a
deprivation of plaintiff['s] ... rights,
privileges and immunities under both article
I of the California Constitution and the
Fourth Amendment, specifically, her rights
not to have her liberty restricted without
legal basis, to be arrested without probable
cause, and to be prosecuted maliciously
without probable cause.  The defendants'
interference with these constitutional rights
was accomplished by means of force, coercion,
and intimidation, and/or the threat thereof.
Plaintiff clarifies that the defendants'
liability under this cause of action is not
based on the privileged acts of reporting
criminal activity and/or testifying in court,

7

but, rather, fabricating evidence used to
justify the filing and continuation of
baseless criminal charges, as set forth
hereinabove.

The Fourth Cause of Action is for malicious prosecution
under California common law against the Abbate Defendants and the
Cassabon Defendants and alleges in pertinent part:

49.   The defendants' intentional and reckless
acts, as described above, caused plaintiff
... to be maliciously prosecuted without
probable cause or other legal basis.
Plaintiff was acquitted at trial.  Plaintiff
clarifies that the defendants' liability
under this cause of action is not based on
the privileged acts of reporting criminal
activity and/or testifying in court, but,
rather, fabricating evidence used to justify
the filing and continuation of baseless
criminal charges, as set forth hereinabove.

**B.   <u>Governing Standards</u>.**

A motion to dismiss under Rule 12(b)(6) tests the
sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,
732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is
appropriate only where "it appears beyond doubt that the
plaintiff can prove no set of facts in support of his claim which
would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-
46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the
complaint lacks a cognizable legal theory or where the complaint
presents a cognizable legal theory yet fails to plead essential
facts under that theory.  *Robertson v. Dean Witter Reynolds,
Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to
dismiss under Rule 12(b)(6), the court must assume the truth of
all factual allegations and must construe all inferences from

them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th Cir.1988).

 **C.** **Motion to Dismiss by Cassabon Defendants**.

  **1.** **First Cause of Action**.

   **a.** **Absolute Witness Immunity**.

 The Cassabon Defendants argue that the First Cause of Action must be dismissed against them because of absolute witness immunity.

 In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Supreme Court held that a witness has absolute immunity from liability for civil damages under Section 1983 for giving perjured testimony at trial. In *Franklin v. Terr*, 201 F.3d 1098 (9th Cir.2000), the Ninth Circuit applied *Briscoe*'s immunity to Terr,

a psychiatrist called by the prosecution who testified in

Franklin's criminal trial based on charges by his daughter,

Franklin-Lipsker, that Franklin had murdered a childhood friend

twenty years earlier, and who was later sued by Franklin under

Section 1983.  Franklin alleged that Terr had conspired with

others to present perjured testimony at the criminal trial.  The

Ninth Circuit held:

> In the instant case, Franklin is attempting
> to circumvent Terr's absolute witness
> immunity by alleging that Terr conspired with
> others to present false testimony.  We are
> persuaded that allowing a plaintiff to
> circumvent the *Briscoe* rule by alleging a
> conspiracy to present false testimony would
> undermine the purposes served by granting
> witnesses absolute immunity from liability
> for damages under § 1983.  Absolute witness
> immunity is based on the policy of protecting
> the judicial process and is 'necessary to
> assure that judges, advocates, and witnesses
> can perform their respective functions
> without harassment or intimidation.' ... As
> the Court stated in *Briscoe*, '[a] witness's
> apprehension of subsequent damages liability
> might induce two forms of self censorship.
> First, witnesses might be reluctant to come
> forward to testify.  And once a witness is on
> the stand, his testimony might be distorted
> by the fear of subsequent liability.' ...
> Moreover, as the district court correctly
> observed, '[a]ny other holding would
> eviscerate absolute immunity since a witness
> rarely prepares her testimony on her own.'
>
> Franklin alleges that Terr conspired with
> Franklin-Lipsker by interviewing her before
> Franklin's trial and by then incorporating
> information obtained from those interviews
> into her own testimony.  Franklin also
> alleges that Terr provided Franklin-Lipsker
> 'with a description of the sort of details
> that would make her testimony more
> persuasive, which Franklin-Lipsker then
> incorporated into her continually evolving

> 1      "recollection" of the Nason murder.'  The
> 2      ostensible purpose of this conspiracy was to
>      ensure that one person's testimony did not
> 3      contradict the other's testimony.  But
>      because Terr's alleged conspiratorial
> 4      behavior is inextricably tied to her
>      testimony, we find that she is immune from
> 5      damages.  We are not presented with, and do
>      not decide, the question whether § 1983
> 6      provides a cause of action against a
>      defendant who conspired to present the
> 7      perjured testimony of another but did not
>      testify as a witness herself.

201 F.3d at 1101-1102.

In *Grey v. Poole*, 275 F.3d 1113 (D.C.Cir. 2002), cited with approval in the July 14 Order, a social worker submitted a statement to the court in connection with a child neglect action. The District of Columbia Circuit held that Poole was entitled to absolute witness immunity, concluding that "[i]t does not matter whether Poole's sworn statement was given in oral or written form; what matters is that her statement was the equivalent of sworn testimony in a judicial proceeding."  275 F.3d at 1118. Also cited with approval in the July 14 Order was *Morstad v. Dept. of Corrections & Rehab.*, 147 F.3d 741, 744 (8th Cir.1998)("Because the court directed Veenestra to evaluate Morstad and to testify at Morstad's probation revocation hearing, we conclude that Veenstra was performing functions essential to the judicial process ... and affirm the district court's determination that Veenstra was entitled to absolute immunity." In *Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir.1990), *reversed on other grounds*, 509 U.S. 259 (1993), the Seventh Circuit addressed whether three expert witnesses had absolute immunity

11

for their pretrial activities of evaluating the bootprint,
writing reports, discussing the case with prosecutors, and
preparing to testify.   509 U.S. at 1244-1245.   The Seventh
Circuit held:

> ... We agree with the district court that
> they do.  *Briscoe* holds that the presentation
> of testimony may not be the basis of
> liability, even if the witness deliberately
> misleads the court.  It would be a hollow
> immunity if the aggrieved party could turn
> around and say, in effect: 'True, your
> *delivery* of bad testimony is immunized, but
> preparing to deliver that testimony is not,
> so I can litigate the substance of your
> testimony.'  Substance is exactly what
> *Briscoe* puts off limits.

> As expert could violate a suspect's rights
> independently of the litigation.  The expert
> might, for example, break into the suspect's
> home to obtain samples for analysis.
> Absolute immunity would not apply to that
> theft, for the same reason it does not apply
> to prosecutorial infliction of punishment
> without trial.  A non-testimonial expert
> could violate a suspect's rights by 'cooking'
> a laboratory report in a way that misleads
> the testimonial experts.  Experts, like the
> police, 'cannot hide behind [the immunity of]
> the officials whom they have defrauded.' ...
> But nothing in the complaint suggests that
> the three experts hid evidence, as opposed to
> misinterpreting it.

> Discussions between the prosecutors and the
> experts violated none of Buckley's rights.
> Preparing to commit slander or perjury is not
> actionable.  The testimony itself is covered
> by immunity.  Buckley makes it clear that the
> testimony is the real gravamen of his
> complaint.  Olsen, he submits, 'wrongfully
> changed his initial opinion'; Robbins was an
> 'utterly disreputable witness-for-hire.'
> Maybe so, but cross-examination rather than a
> suit for damages is the right way to
> establish these things.  Junk science is a
> plague of contemporary litigation, but the

12

peddlers of poorly supported theories do not
expose themselves to liability by doing
research out of court or appearing in more
than one case.

*White v. Frank*, 855 F.2d 956 (2nd Cir.1988)
holds that *Briscoe* does not apply to
'complaining witnesses'.  Buckley contends
that the three experts are in this category,
because but for their opinions the State's
Attorney would not have obtained an
indictment.  The parallel is not apt.  None
of the experts invented the report of a crime
or brought the fable to the state's
attention.  Jeanine Nicarico is dead.  Each
expert was brought into the case by the
prosecutors, who sought to evaluate the
strength of the evidence against Buckley.  We
therefore need not decide whether to follow
*White*.

919 F.2d at 1245.

The Complaint the subject of the July 14 Order alleged in

pertinent part:

29.  The false and baseless allegations of
embezzlement against Tiffany were supported
by the accountant firm retained on behalf of
the prosecution, [defendant Cassabon &
Associates] and the accountants from Cassabon
specifically assisting the prosecution,
[defendants Victor K. Fung and Erin M.
McIlhatton].  These defendants disregarded
all of the above-outlined facts showing the
embezzlement allegations to be baseless and
incredible, as well as the professional
standards that are supposed to be followed by
accountants engaged to provide litigation
services.  As a result, these defendants
produced misleading, result-oriented reports
that served to add a false air of legitimacy
to the embezzlement allegations.

The July 14 Order dismissed the Section 1983 claim against the

Cassabon Defendants:

The allegations in paragraph 29 fit with the
holding of the Seventh Circuit in *Buckley*.

13

> There is no allegation in the Complaint against the Cassabon Defendants or any other defendants that they fabricated evidence or conspired to do so.  Absent such allegations against the Cassabon Defendants, they are entitled to absolute witness immunity.

The Cassabon Defendants argue that Tiffany has not provided any additional material allegations as to them and that, therefore, they are entitled to dismissal of the First Cause of Action because of absolute witness immunity.

Tiffany responds that, pursuant to paragraph 28 of the FAC, the Cassabon Defendants are not being sued for their testimony at the criminal trial.  Rather, they are being sued for "the fabrication of evidence that permitted the continuation of the prosecution against the plaintiff, which was developed by conspiring with and engaging in joint activity with the other defendants."

There is no allegation in the FAC that the Cassabon Defendants specifically fabricated evidence presented at the criminal trial.  The FAC alleges that the evidence was fabricated by Abbate, Hutton and Spencer before the criminal action was filed against Tiffany.  Paragraph 28 alleges that the Cassabon Defendants "were brought into this criminal prosecution after the judge who presided over the preliminary examination had expressed doubt and criticism regarding the lack of any objective financial evidence that Tiffany had committed a crime".  Paragraph 28 further alleges:

> [I]nstead of making a serious, objective inquiry into the issues they were retained to

14

1
2
3
4
5
6

>examine, these defendants disregarded all of
>the above-outlined facts showing the
>embezzlement allegations baseless and
>incredible, as well as the professional
>standards that are supposed to be followed by
>accountants engaged to provide litigation
>services.  As a result, these defendants
>produced misleading, result-oriented reports
>that served to add a false air of legitimacy
>to the embezzlement charges and which
>permitted said charges to proceed to trial.

Although this is a very close question, the allegations in

Paragraph 28 permit an inference that the Cassabon Defendants

fabricated the evidence they presented as a witness at the

criminal trial by "produc[ing] misleading, result-oriented

reports ...."  This is sufficient to withstand the motion to

dismiss under the standards set forth above; it provides

Defendants fair notice of the claims against which they must

defend.  Whether the Cassabon Defendants are entitled to absolute

witness immunity pursuant to *Briscoe* is a question of fact to be

resolved at summary judgment or trial.  Therefore, the motion to

dismiss on this ground is DENIED

### b.   **Conspiracy Allegations**.

The Cassabon Defendants further argue that Tiffany cannot

circumvent absolute witness immunity by alleging that the

Cassabon Defendants conspired with the other defendants.  The

July 14 Order ruled that absolute witness immunity cannot be

circumvented by alleging that the witness conspired to present

perjured testimony.  The July 14 Order ruled in pertinent part:

>The Abbate Defendants further argue that the
>First Cause of Action fails to allege
>sufficient specific facts to support a claim

of conspiracy which "must survive the application of the heightened pleading standard."  In so arguing, the Abbate Defendants cite *Coverdell v. Dept. of Social & Health Services*, 834 F.2d 758, 769 (9th Cir.1987).

*Coverdell* is not valid authority for this claim.  *Coverdell* involved the appellate review of a summary judgment order and not the standards to be applied in determining whether allegations of conspiracy state a claim within the meaning of Rule 12(b)(6).  Furthermore, the Supreme Court has rejected the requirement of a heightened pleading standard in civil rights cases, ruling that the sufficiency of the allegations must be governed by application of Rules 8 and 9, Federal Rules of Civil Procedure.  *See Crawford-El v. Britton*, 523 U.S. 574 (1998); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993); *see also Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002); *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052 (9th Cir.2005).

The Abbate Defendants object that there are no allegations in the Complaint from which it may be inferred that John Abbate did anything whatsoever to further the alleged conspiracy.  With regard to the other Abbate Defendants, it is argued that there are no allegations "as to how the Abbate defendants allegedly conspired with each other, the District Attorneys office and the Cassabon defendants to provide false testimony."

Plaintiffs rejoin that the allegations of the Complaint suffice to alert defendants to the sequence of events and the relationship between the various defendants that are "more than sufficient to plead a conspiracy through circumstantial facts" and demonstrate the "requisite 'who, what, where, and when' information regarding the conspiracy."

With the exception of defendant John Abbate, the conspiracy allegations arguably are sufficient to permit defendants to frame a response.  The Complaint does not make clear

16

whether multiple conspiracies are alleged and, if so, who are the members, what actions were allegedly taken by those members in furtherance of the conspiracies, and at what times.  Furthermore, plaintiffs concede that more specific allegations with regard to the participation of the Abbate Defendants can be made.  The conspiracy claim is DISMISSED with LEAVE TO AMEND to allow plaintiffs to allege more specifically the factual basis of the conspiracy or conspiracies, particularly with respect to the Abbate Defendants.

The Cassabon Defendants argue that dismissal of the First Cause of Action based on the allegations of conspiracy is required because the allegations are conclusory and without factual specificity.

As a general rule, plaintiffs in federal court are not required to plead the elements of a prima facie civil rights case.  *See Swierkiewicz v. Sorema, N.A.,* 503 U.S. 506 (2002); *see also Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir.2005)("[A] heightened pleading standard should only be applied when the Federal Rules of Civil Procedure so require.").  Plaintiffs are simply required to provide a "short and plain statement of the claim" to give the defendant fair notice of what the claim is and the grounds upon which it is based.  *Swierkiewicz*, *id.*  With respect to allegations of conspiracy, heightened pleading is required by Rule 9, Federal Rules of Civil Procedure, when the object of the alleged conspiracy is fraudulent.  *See Wasco Products v. Southwall Technologies*, 435 F.3d 989, 991 (9th Cir.), *cert. denied*, ___ U.S. ___, 2006 WL 1522609 (2006)("Based on these precedents and

17

the plain language of Rule 9(b), we hold that under federal law a plaintiff must plead, at a minimum, the basis elements of a civil conspiracy if the object of the conspiracy is fraudulent.").[1] "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims.  Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Jackson v. Carey,* 353 F.3d 750, 755 (9th Cir.2004).  Discovery and summary judgment motions, not motions to dismiss, "define disputed facts" and "dispose of unmeritorious claims." *Swierkiewicz*, *id.* at 512.

While the allegations that defendants "conspired" is conclusory, the FAC does allege the factual basis upon which the conspiracy is based.  The allegations are that Spencer and the Abbate Defendants agreed to falsely prosecute Tiffany based on fabricated evidence to forestall any claims against the Abbate Defendants by Tiffany based on employment and that Spencer retained the Cassabon Defendants to give credence to the

---

[1] In *Wasco Products*, the Ninth Circuit specifically expressed no opinion as to pleading requirements if the object of the conspiracy is non-fraudulent. 435 F.3d at 992.  In *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir.2004), the Ninth Circuit applied a heightened pleading standard to a claim for conspiracy to violate civil rights.  However, *Olsen* relied on *Branch v. Tunnell*, 14 F.3d 449 (9th Cir.1994).  *Branch v. Tunnell* was effectively overruled by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002) and *Empress LLC, supra.*  Although the case law in the Ninth Circuit since the Supreme Court cases rejecting heightened pleading is not consistent, the better view, in line with Supreme Court authority, is that notice pleading suffices to allege a conspiracy to violate civil rights unless the object of that conspiracy is fraudulent.

18

fabricated evidence as part of that conspiracy.  The FAC alleges
that the Cassabon Defendants were retained by Spencer after
Tiffany's arrest.  The Cassabon Defendants cannot be responsible
for her allegedly false arrest unless the Cassabon Defendants
agreed and joined the existing conspiracy with knowledge of that
wrongful act and thereby adopted the prior acts of the alleged
co-conspirators.  Nonetheless, the allegations of conspiracy are
sufficient under notice pleading standards to withstand dismissal
for failure to state a claim notwithstanding the absolute witness
privilege.  The motion to dismiss on this ground is DENIED.[2]

## 2. **Third Cause of Action**.

The Cassabon Defendants move to dismiss the Third Cause of
Action for violation of California Civil Code § 52.1 on several
grounds.[3]

---

[2] Denial of the Cassabon Defendants' motion on this ground is
not intended to express any opinion with respect to the
applicability of the absolute witness privilege. Clearly, there is
a fine line between participating in a conspiracy to fabricate
evidence and participating in a conspiracy to present perjured
testimony.

[3] California Civil Code § 52.1(b) provides that "[a]ny
individual whose exercise or enjoyment of rights secured by the
Constitution or laws of the United States, or of rights secured by
the Constitution or laws of this state, has been interfered with,
or attempted to be interfered with, as described in subdivision
(b), may institute and prosecute ... a civil action for damages,
including, but not limited to, damages under Section 52, injunctive
relief, and other appropriate equitable relief to protect the
peaceable exercise or enjoyment of the right or rights secured."
Section 52.1(a) provides for an action by the Attorney General,
district attorney or city attorney "[i]f a person or persons,
whether or not acting under color of law, interferes by threats,
intimidation, or coercion, or attempts to interfere by threats,
intimidation, or coercion, with the exercise or enjoyment by any
individual ... of rights secured by the Constitution or laws of the
United States, or the rights secured by the Constitution or laws of

19

### a. __Sufficiency of Allegations of Threats, Intimidation, or Coercion__.

The Cassabon Defendants seek dismissal of the Third Cause of Action, contending that there are no allegations in the FAC of any specific threats, intimidation or coercion by the Cassabon Defendants within the meaning of Section 52.1.

In *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998), the California Supreme Court explained that "section 52.1 does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *See also Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004)("the language of section 52.1 provides remedies for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion, and whether or not state action is involved.")

Tiffany argues that Section 52.1 "does not require conduct that 'interferes by threats, intimidation, or coercion' with a claimant's exercise or enjoyment of her constitutional rights occur simultaneously with the resultant constitutional violation" and that Section 52.1 does not "require that this conduct play a direct role in bringing about the constitutional violation." Tiffany concedes that no case law addresses these issues specifically in the context of Section 52.1. However, she refers to *McCalden v. California Library Association*, 955 F.2d 1214 (9th

_____

this state ...."

20

Cir.1989), *cert. denied,* 504 U.S. 957 (1992) as "finding a claim for a violation of California Civil Code § 51.7 sufficient, although it alleged non-contemporaneous intimidating conduct that was not even conveyed directly to the victim".

In *McCalden*, the Ninth Circuit addressed the district court's dismissal with prejudice of the claim by McCalden, a self-described "Holocaust revisionist", under California Civil Code § 51.7 on the ground that the complaint did not sufficiently allege intimidation by threat of violence committed to plaintiff's person or property as required by Section 51.7. Section 51.7(a), as amended in 1984, provided in relevant part:

> All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute.  The identification in this subdivision of particular bases of discrimination is illustrative only rather than restrictive.

The Ninth Circuit ruled:

> Liberally construed, the complaint contains one allegation of a specific threat - the AJC's alleged statement to the CLA, 'at the urging and request and with the knowledge, approval and cooperation of Defendants Marvin Hier ... and Simon Wiesenthal Center' that if the contract with appellants were not canceled, "[d]efendant CLA's 1984 Annual Conference would be disrupted, there would be damage to property and the CLA would be 'wiped out.'" ... Appellees claim that this language can be construed only as a threat against the CLA, not against the person or property of appellant.  They cite *Coon v.*

21

*Joseph*, 192 Cal.App.3d 1269 ... (1987), in which the court held that the plaintiff, a gay man, could not state a § 51.7 claim against a bus driver by alleging that his lover was verbally abused and struck in his presence.  The court stated:

> The complaint establishes that no violence or intimidation was committed or threatened against [plaintiff's] person and thus no cause of action exists in his own right.  Following [plaintiff's] argument, any person would have the right to recover damages for himself or herself whenever the rights of any other human being of similar ... sexual orientation were threatened.

*Id.* at 1277-78 ....

On a motion to dismiss, all reasonable inferences are to be drawn in favor of the non-moving party ... Appellant alleges that the appellees intended to disrupt his presentation by creating a demonstration that appellees knew and intended 'would create a reasonable probability of property damage and of violence against Plaintiff and members of Defendant CLA.' ... In view of all the facts pled, it is reasonable to infer that any property damage or injury threatened could be directed against appellant, because the allegations clearly link the alleged threat to an intent to disrupt appellant's exhibit and program.  This case must therefore be distinguished from *Coon*, because it can be reasonably inferred from the complaint that the threatened violence was directed against appellant.

Although appellees suggest that the statute must be read as requiring the threat to be conveyed directly to the person threatened, the statute only requires that the plaintiff be intimidated by threat of violence committed against his person or property.  In construing a remedial statute, on a motion to dismiss, in the absence of clear state court direction, this court is reluctant to read

22

1          any unnecessary restrictions into § 51.7.

2   955 F.2d at 1221-1222.

3        Tiffany argues that, because Section 52.1 does not require

4   proof of animus against the plaintiff, "[i]t would therefore make

5   little sense that the more general Bane Act would require a

6   closer nexus between the perpetrator's threatening acts and the

7   constitutional violation than does the Unruh Act."  Contending

8   that Section 52.1 is a more general statute that should be

9   construed more broadly, Tiffany argues:

10              [The] allegations that she was for the
                duration of the prosecution against her,
11              subject to a legitimate threat of
                prosecution, i.e., a loss of liberty, her
12              allegations under section 52.1 are
                sufficient.  Indeed, the defendants by
13              causing plaintiff's prosecution and raising
                the prospect of her imprisonment, committed
14              acts that were inherently coercive and
                threatening.
15
        Although the Cassabon Defendants have the better of this
16
    argument, whether Tiffany's position that general "possibility of
17
    incarceration" is ultimately sustainable against them presents a
18
    mixed issue of fact and law that will benefit from factual
19
    development.  Given the standards governing resolution of a
20
    motion to dismiss, the FAC marginally alleges a claim for
21
    violation of Section 52.1 to require the Cassabon Defendants'
22
    response.  The motion to dismiss on this ground is DENIED.
23
                    b.  **Speech**.
24
        The Cassabon Defendants further move for dismissal of the
25
    Third Cause of Action, referring to Civil Code § 52.1(j):
26

23

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence has the apparent ability to carry out the threat.

The Cassabon Defendants contend that the allegations of the FAC are that their speech caused the violation of Section 52.1, not that they threatened or intimidated Tiffany to forestall her from exercising her rights.

This claim is arguably marginal.  After factual development the court will be able to evaluate the substance of this claim. The motion to dismiss on this ground is DENIED.

### c. **Immunity Pursuant to California Civil Code § 47(b)**.

The Cassabon Defendants move to dismiss the Third Cause of Action because the allegations against them relate to reports and testimony in a legal proceeding, contending that the litigation privilege set forth in California Civil Code § 47(b) bars Tiffany's claim for violation of Section 52.1

Section 47(b) bars a civil action for damages based on statements made in any judicial proceeding, in any official proceeding authorized by law, or in the initiation or course of any mandate-reviewable proceedings authorized by law.  The litigation privilege provided in Section 47(b) applies to any communication (1) made in judicial or quasi-judicial proceedings;

1  (2) by litigants or other participants authorized by law; (3) to

2  achieve the objects of the litigation; and (4) that have some

3  connection or logical relation to the action.  *A.F. Brown Elec.*

4  *Contractor, Inc. v. Rhino Elec.*, 137 Cal.App.4th 1118, 1126

5  (2006).  Section 47(b) establishes an absolute privilege for such

6  statements and bars all tort causes of action based on them

7  except a cause of action for malicious prosecution.  *Hagberg v.*

8  *California Federal Bank*, 32 Cal.4th 350, 360 (2004).  Section

9  47(b) protects false or fraudulent statements or representations

10  made in the course of litigation, *see Rodas v. Spiegel*, 87

11  Cal.App.4th 513, 519-520 (2001), or in contemplation of

12  litigation, *see Carden v. Getzoff*, 190 Cal.App.3d 907, 912-916

13  (1987), the filing of a false declaration*, see Cantu v.*

14  *Resolution Trust Corp.*, 4 Cal.App.4th 857, 886 (1992), and the

15  filing of forged documents.  *See Pettitt v. Levy*, 28 Cal.App.3d

16  484, 488-489 (1972).

17      Dismissal on this ground is not appropriate.  Although the

18  allegations of the FAC suggest that the allegations against the

19  Cassabon Defendants will be subject to Section 47(b), ultimate

20  resolution of this issue presents a mixed question of law and

21  fact, including whether the Cassabon Defendants' actions had

22  collateral purposes which went beyond the litigation, to be

23  resolved at summary judgment or trial.  The motion to dismiss on

24  this ground is DENIED.[4]

25  _____

26      [4]Tiffany argues that Section 47(b) only applies to tort claims
    other than malicious prosecution and, to the extent that she

**d.   <u>Immunity Pursuant to California Civil Code §</u>**
<u>47(c)</u>.

The Cassabon Defendants argue that the Third Cause of Action

is barred by the "interested person" privilege set forth in

California Civil Code § 47(c).

Section 47(c) provides in pertinent part:

> A privileged publication or broadcast is one
> made:
>
> ...
>
> (c) In a communication, without malice, to a
> person interested therein, (1) by one who is
> also interested, or (2) by one who stands in
> such a relation to the person interested as
> to afford a reasonable ground for supposing
> the motive for the communication to be
> innocent, or (3) who is requested by the
> person interested to give the information.

"California's common interest privilege, Cal.Civ.Code § 47(c),

immunizes a person's statement to others on matters of common

interest from liability in tort, provided that the person did not

act with malice."  *Kelly v. General Telephone Co.*, 136 Cal.App.3d

278, 285 (1982).

The Cassabon Defendant assert that the "elements of the

interested person privilege are clearly satisfied by the Cassabon

Defendants as to its alleged communications to the District

Attorney and Court."

---

alleges an unconstitutional malicious prosecution claim under
Section 52.1, it is not barred by Section 47(b).  However, in the
July 14 Order, Tiffany's argument that the Section 47(b) privilege
did not apply to actions pursuant to Section 52.1 was rejected.
She provides no new authority.

1      Tiffany responds that the FAC adequately alleges malice,

2   citing *Bertero v. National General Corp.*, 13 Cal.3d 43, 66

3   (1974), as authority that "malice can be alleged

4   circumstantially".

5      *Bertero* does not so hold.  The discussion cited by Tiffany

6   involved the manner of proof of malice for punitive damages under

7   Civil Code § 3294 and has nothing to do with pleading

8   requirements.

9      The only allegation of malice against the Cassabon

10  Defendants in the FAC is found in paragraph 38 of the First Cause

11  of Action: "The non-municipal defendants' conduct set forth above

12  was intentional, wanton, malicious, oppressive, and undertaken

13  with reckless disregard for Tiffany's rights, thus entitling her

14  to an award of punitive damages under federal law."  There is no

15  allegation that the Cassabon Defendants' acted with malice in the

16  Third Cause of Action.  Although malice may be averred generally,

17  *see* Rule 9(b), Federal Rules of Civil Procedure, it nonetheless

18  must be alleged.  However, paragraph 38 is incorporated by

19  reference in the Third Cause of Action.  Because paragraph 38

20  alleges that the Cassabon Defendants acted maliciously, dismissal

21  on this ground is DENIED.

22          **3.   <u>Fourth Cause of Action</u>**.

23      The Cassabon Defendants move to dismiss the Fourth Cause of

24  Action for malicious prosecution on the ground that they did not

25  commence the criminal action against Tiffany.

26      In *Zamos v. Stroud*, 32 Cal.4th 958 (2004), the California

Supreme Court ruled that "[c]onfining the tort of malicious prosecution to the *initiation* of a suit without probable cause would be ... without support in authority or in principle", 32 Cal.4th at 966, and that "an attorney may be held liable for malicious prosecution for continuing to prosecute a lawsuit discovered to lack probable cause." *Id.* at 970.

Tiffany relies on *Zamos* in contending that "[o]ne who contributes to the continuation of an action instituted without probable cause and acts with malice may be liable for malicious prosecution." Tiffany further asserts that witnesses may be held liable for malicious prosecution under California law, citing *Kimmel v. Goland*, 51 Cal.3d 202, 209 (1990) and *Gootee v. Lightner*, 224 Cal.App.3d 587, 591-592 (1990).

Neither *Kimmel* nor *Gootee* involved a claim for malicious prosecution. However, *Jacques Interiors v. Petrak*, 188 Cal.App.3d 1363 (1987), is a malicious prosecution case against an insurance adjuster (Petrak), by a commercial tenant (Jacques), who was sued for subrogation by the insurer (Sentry) of a building damaged by fire, who was also Petrak's employer.  In rejecting Petrak's argument that he could not be liable for malicious prosecution because the suit was filed after Sentry's attorney, McCaskey, had conducted his own investigation, the Court of Appeal noted:

> 'One may be civilly liable for malicious prosecution without personally signing the complaint initiating the ... proceeding.  If a person, without probable cause and with malice, instigates or procures the [action], he is liable.' ... '"[I]t is enough if [the defendant] was instrumental in setting the

28

> law in motion and caused the [action] to
> proceed." ...' ... '[T]he test of liability
> in an action for malicious prosecution is:
> Was defendant actively instrumental ... [or]
> the proximate and efficient cause of
> maliciously putting the law in motion[?] ....

188 Cal.App.3d at 1371-1372.  *See also Lujan v. Gordon*, 70

Cal.App.3d 260, 264 (1977)("There does not appear to be any good

reason not to impose liability upon a person who inflicts harm by

aiding or abetting a malicious prosecution which someone else has

prosecuted.").

     Based on this authority, the FAC alleges a facially

sufficient claim against the Cassabon Defendants.  Dismissal on

this ground is DENIED.[5]

     D.  **Motion to Dismiss by Abbate Defendants**.

          1.  **First Cause of Action**.

               a.  **Failure to Allege that Conduct of Abbate**

**Defendants Was Proximate Cause of District Attorney Spencer's**

**Decision to Prosecute**.

     The Abbate Defendants move to dismiss the First Cause of

Action on the ground that the allegations of the FAC do not

establish that their actions proximately caused the decision by

defendant Spencer to prosecute Tiffany for embezzlement.[6]

_____

     [5]In addition, the Cassabon Defendants argue, Tiffany does not
allege malice against them.  However, as discussed above, the
incorporation by reference of paragraph 38 satisfies this pleading
requirement.
     [6]Although  plaintiff  includes  a  very  lengthy  footnote
concerning the issue of "state action", "state action" is not the
basis upon which the Abbate Defendants seek dismissal.  There is a
difference between "state action" and "proximate cause".

1    In so moving, the Abbate Defendants rely on Ninth Circuit

2 authority discussing the presumption of the exercise of the

3 prosecutor's independent judgment.[7]  Thus, in *Smiddy v. Varney*,

4 665 F.2d 261, 266-267 (9th Cir.1981), the Ninth Circuit held:

> Filing of a criminal complaint immunizes
> investigating officers such as the appellants
> from damages suffered thereafter because it
> is presumed that the prosecutor filing the
> complaint exercised independent judgment in
> determining that probable cause for an
> accused's arrest exists at that time.  This
> presumption may be rebutted, however.  For
> example, a showing that the district attorney
> was pressured or caused by the investigating
> officers to act contrary to his independent
> judgment will rebut the presumption and
> remove the immunity.  Also the presentation
> by the officers to the district attorney's
> office of information known to them to be
> false will rebut the presumption.  These
> examples are not intended to be exclusive.
> Perhaps the presumption may be rebutted in
> other ways.

15 The Abbate Defendants cite *Borunda v. Richmond*, 885 F.2d 1384,

16 1390 (9th Cir. 1988), *Barlow v. Ground*, 943 F.2d 1132 (9th

17 Cir.1991), and *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th

18 Cir.1994) as other examples of the presumption of independent

19 prosecutorial judgment either breaking or not breaking the chain

20 of causation.

21    Tiffany argues that the *Smiddy* presumption does not apply in

22 the context of a private citizen and asserts that she has found

23 no cases applying the presumption in that context.  Tiffany notes

24

25    [7]Most of the cases relied upon by the Abbate Defendants did
not involve motions to dismiss but involved evidentiary rulings
26 following summary judgment or trial.

that *Arnold v. Intern. Business Machines*, 637 F.2d 1350 (9th Cir.1981), relied upon by the Abbate Defendants in this aspect of their motion to dismiss, *see discussion infra*, does not mention the *Smiddy* presumption.

In reply, the Abbate Defendants cite *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir.2004), a case applying the independent prosecutor presumption to "non-law enforcement personnel".

However, while the defendants in *Awabdy* were not police officers, they were officials of the City of Adelanto, not private citizens.

The Abbate Defendants further note that *Smiddy* was not decided when the decision in *Arnold* was issued.  This point is irrelevant because subsequent cases discussing the liability of private citizens also do not discuss the *Smiddy* presumption.

The Abbate Defendants also cite *Arnold v. Intern. Business Machines*, 637 F.2d 1350 (9th Cir.1981).  There, Arnold brought an action against IBM and various of its employees for alleged violations of Arnold's civil rights.  The Ninth Circuit affirmed the grant of summary judgment for defendants, holding that in the absence of evidence that IBM and its employees controlled the police investigation, which led to Arnold's arrest on charges of stealing corporate documents and trade secrets and the search of Arnold's residence, the involvement of IBM and the employees in the investigation was not the proximate cause of Arnold's injuries and Arnold could not recover under statutes authorizing

31

civil actions for deprivation of rights under color of law and conspiracy to defraud persons of their civil rights.  In so holding, the Ninth Circuit stated:

> ... It is clear that 'but for' IBM's involvement, there would have been no investigation, and Arnold never would have been arrested or indicted or had his residence searched.
>
> There is nothing in the record, however, to indicate that defendants exerted any control over the decision making of the Task Force. Deputy District Attorney Bender testified that the Task Force used the information supplied by IBM to determine which companies might be in possession of IBM documents, but that the Task Force conducted a full and independent investigation.  Bender and Sergeant Frechette both testified that neither Callahan nor IBM controlled the investigation.  Arnold has pointed to no facts that indicate that IBM in any way controlled the police investigation or that the Task Force was in any sense a mere conduit for carrying out IBM's will.

637 F.2d at 1357.  The Abbate Defendants also cite *Mann v. City of Tucson Dept. of Police*, 782 F.2d 790, 793 (9th Cir.1986), a case involving dismissal, wherein the Ninth Circuit held in pertinent part:

> [D]ismissal of these claims against defendants other than the Tucson police defendants was proper for other reasons.  The substantive constitutional violation charged consisted of two unlawful searches of Mann's apartment.  The search was performed by the Tucson police officers.  All but two of the other defendants are private persons who allegedly instigated, aided, or participated in the searches.  Under *Arnold v. IBM Corp.*, ... in order to establish the requisite proximate cause between the conduct of private persons and searches in violation of section 1983, a plaintiff must prove the

32

1           private individuals exercised control over
the decisionmaking in a police investigation.
2           Mann has failed to allege that these other
defendants controlled the investigation or
3           directed that the searches be conducted, and
the facts alleged would not support such a
4           claim.  For this reason, the section 1983
claims against these private defendants were
5           properly dismissed.

6  782 F.2d at 793.

7     In contrast to *Arnold* and *Mann*, the Abbate Defendants argue,

8  the FAC makes no allegations of control by the Abbate Defendants

9  over the decisions made by the District Attorney and the Cassabon

10  Defendants.  The FAC describes the ultimate control of the

11  prosecution by defendant Spencer, i.e., that Spencer gave

12  Tiffany's matter "special attention" and demanded a "felony

13  resolution" and "despite any credible incriminating facts or

14  evidence, the prosecution persisted in pursuing a felony

15  conviction at Spencer's instruction."  The Abbate Defendants also

16  point to the allegations that Spencer "directed and routed"

17  Abbate's complaint from the Merced Police Department, that

18  "Hutton acted at all times at Spencer's direction", that Hutton

19  and Abbate at Spencer's direction, coerced and bribed a witness

20  to testify against Tiffany, that the Cassabon Defendants were

21  hired by the prosecutor "to add a false air of legitimacy to the

22  embezzlement charges".

23     The Abbate Defendants argue that no facts are alleged in the

24  FAC that overcome the presumption that the prosecutor exercised

25  independent judgment to prosecute Tiffany.  They further argue

26  that the absence of alleged facts to establish proximate cause is

33

1  demonstrated by the allegations that the prosecutor hired the

2  Cassabon Defendants who allegedly "provided misleading, result-

3  oriented reports that served to add a false air of legitimacy to

4  the embezzlement charges and which permitted said charges to

5  proceed to trial".  The Abbate Defendants assert that, by

6  claiming the Cassabon Defendants were key prosecution witnesses,

7  the FAC attenuates the alleged proximate causation between the

8  Abbate Defendants' alleged conduct and the damages sustained by

9  Tiffany.  Therefore, the Abbate Defendants contend, the FAC does

10  not allege the requisite proximate cause between the conduct of

11  Robert Abbate and the ultimate prosecution of Tiffany.

12      Tiffany responds that the Abbate Defendants ignore the

13  allegations that they procured her criminal prosecution with

14  false and fabricated evidence, that the Abbate Defendants

15  participated in and influenced the investigation and

16  prosecutorial process, acting jointly and conspiratorially with

17  other defendants, in part based on an alleged special

18  relationship with Spencer.  Tiffany further contends that Ninth

19  Circuit authority holds that a showing that a private party had

20  "some control" over a prosecutorial decision would be sufficient

21  to allege proximate causation.  This is a theory of concurrent

22  cause.

23      In so arguing, Tiffany cites *King v. Massarweh*, 782 F.2d 825

24  (9th Cir.1986), *Franklin v. Fox*, 312 F.3d 423 (9th Cir.2002), and

25  *Crowe v. County of San Diego*, 303 F.Supp.2d 1050 (S.D.Cal.2004).

26      In *King v. Massarweh*, the district court's dismissal of a

34

Section 1983 claim against the defendant landlord was affirmed. Citing *Arnold*, the Ninth Circuit affirmed:

> ... Massarweh's involvement with the police is even more attenuated [than the involvement of IBM in *Arnold*]. Massarweh's sole act was to call the police. Nothing in the record indicates that Massarweh exerted any control over the officers' decision to search appellants' apartments or to arrest the appellants. On the facts alleged by the appellants, Massarweh sought the appellants' removal as trespassers, but the police conduct that allegedly violated the plaintiffs' Fourth Amendment rights took place on the officers' own initiative.

782 F.2d at 829. In *Franklin v. Fox*, the Ninth Circuit affirmed the district court's grant of summary judgment in favor of Franklin-Lipsker, the daughter of plaintiff, who plaintiff alleged conspired with state prosecutors in violation of his civil rights:

> Furthermore, to the extent that Franking aims to hold his daughter responsible for [District Attorney] Murray's facilitation of the visit or trial prosecutor Tipton's use of his jailhouse silence against him at trial, his claim fails. In order for a private individual to be liable for a § 1983 violation when a state actor commits the challenged conduct, the plaintiff must establish that the private individual was the proximate cause of the violation ....
>
> *Arnold* ... is instructive. There a task force including law enforcement officials, the district attorney, and an IBM security manager investigated trade secret leaks from within IBM. After his arrest and indictment and the search of his home, the plaintiff sued IBM under § 1983 based on his involvement with the investigation. We held that, although IBM provided the task force with its security manager, information, funding, and grand jury witnesses, the

35

> company was not the proximate cause of the
> plaintiff's injuries because it did not
> direct the task force to take action against
> him ....
>
> Here, there is no evidence that Murray and
> Tipton were under Franklin-Lipsker's control
> or that they failed to exercise their own
> independent judgment when they violated
> Franklin's rights.  Murray's response to
> Franklin-Lipsker's request for help to visit
> her father and to offer her advise as to the
> advisability of a visit did not turn
> Franklin-Lipsker into a facilitator or a
> cause of the state's violation.  With respect
> to the violation at trial, one of the bases
> upon which Franklin's conviction was
> overturned, there is no evidence that
> Franklin-Lipsker was even aware of Tipton's
> decision to allude to Franklin's silence
> during the jail visit as evidence of guilt.

312 F.3d at 445-446.  In *Crowe v. County of San Diego*, the district court granted summary judgment for defendant Blum, a psychologist in private practice who consulted with the Escondido Police Department during the murder investigation because Blum did not participate in the arrests of the boys or the searches of their residences and "there is absolutely no evidence that defendant Blum had any control over the other defendants' decision to conduct the challenged searches and arrests."  303 F.Supp.2d at 1063-1064.

Resolution of the issue of proximate causation on the part of the Abbate Defendants is wholly factual - what actually happened is not known.  Although the Abbate Defendants discuss at length the facts of the cases cited by them and by Tiffany, those facts were known and the facts in this case are not.  The allegations in the FAC are not simply that the Abbate Defendants

36

1  made a complaint to the District Attorney that Tiffany had

2  embezzled.  The allegations are that the Abbate Defendants had

3  influence with the District Attorney and with his and Hutton's

4  connivance, fabricated evidence, including coercing a witness,

5  resulting in Tiffany's prosecution for the purpose of

6  forestalling any attempt by Tiffany to make claims against the

7  Abbate Defendants based on her employment.  Tiffany will have to

8  prove that facts exists to establish that the Abbate Defendants

9  proximately caused the alleged constitutional violations, but

10 that is an issue for summary judgment or trial.  The motion to

11 dismiss on this ground is DENIED.

12         **b.   Absolute Witness Immunity**.

13     The Abbate Defendants also move for dismissal of the First

14 Cause of Action on the basis of absolute witness immunity.  *See*

15 *discussion infra*.

16     The July 14 Order ruled in pertinent part:

17         Plaintiffs respond that the Abbate Defendants
        are not entitled to dismissal of the First

18         Cause of Action on the ground of absolute
        witness immunity because the Complaint does

19         not allege a conspiracy to concoct false
        testimony but the "wholesale fabrication of

20         criminal charges."  Plaintiffs refer to
        *Cunningham v. Gates*, 229 F.3d 1271, 1291 (9th

21         Cir.2000), wherein the Ninth Circuit, while
        recognizing that defendants, as witnesses,

22         are entitled to absolute immunity based on
        their testimony notwithstanding allegations

23         of conspiracy to commit perjury, held:
        "Obviously, testimonial immunity does not

24         encompass non-testimonial acts such as
        fabricating evidence."

25

26         In their reply brief, the Abbate Defendants
        contend that plaintiffs' reliance on <u>Gates</u> is

misplaced:

> [T]he Fenters' complaint is notably
> bereft of allegations that are not
> closely tied to the alleged false
> testimony.  There are no
> allegations that the Abbate
> defendants manufactured or procured
> false evidence, destroyed evidence
> and or coerced witnesses.  Rather
> beyond the allegations of alleged
> false testimony is simply making a
> complaint to the district attorneys
> office.  Nor is there any
> allegation that the only source of
> any of the disputed evidence was
> the Abbates.

> The Abbate Defendants are entitled to
> dismissal of the First Cause of Action to the
> extent that any of the Abbate Defendants
> testified at the trial (or preliminary
> hearing).  The Abbate Defendants are not
> entitled to dismissal of the First Cause of
> Action on this ground to the extent that the
> Complaint can be construed as alleging that
> the Abbate Defendants fabricated evidence or
> conspired to do so.  However, the Complaint
> does not specifically allege that the Abbate
> Defendants (or any other defendants)
> fabricated any evidence or conspired to do
> so.  The allegations are that the complaint
> of embezzlement was false, baseless, and in
> retaliation for Tiffany's complaints to her
> employer about wages and sexual harassment
> but there is no allegation that the evidence
> supporting that complaint of embezzlement was
> fabricated.

> The First Cause of Action is DISMISSED on
> this ground with LEAVE TO AMEND.

Arguing that the cases cited above hold that absolute

witness immunity applies to perjured testimony or to a conspiracy

to provide perjured testimony, the Abbate Defendants complain

that the FAC vaguely alleges that Robert Abbate "fabricated and

manipulated" Yosemite Chevron business records without

specifically identifying the allegedly fabricated evidence in any manner, i.e., the FAC does not allege whether Robert Abbate created false ledgers or receipts with the intent to set up Tiffany or destroyed exculpatory evidence.  The Abbate Defendants further claim that the allegations in the FAC that Abbate "downplayed and distorted the fact that Yosemite Chevron at all times had a video surveillance system that would have depicted an employee taking cash from the store register" and that "no videotapes were disclosed" do not allege any facts that the Abbate Defendants fabricated or destroyed videotapes.  The Abbate Defendants contend:

> [W]hile the [FAC] alleges that the Abbate defendants fabricated evidence in a merely conclusory fashion, no details whatsoever are provided of the nature of the evidence, or the date the fabricated evidence was presented to the prosecutor.  Nor are there any allegations that the Abbate defendants destroyed evidence.  Rather, there is merely the allegation that the Abbate defendants distorted the impact of the videotapes or lack thereof.  This allegation describes testimonial acts, not the fabrication or destruction of evidence, which as a matter of law is insufficient to plead around Briscoe immunity.

Tiffany responds that the FAC substantially expanded on the allegations of the Complaint, referring to paragraphs 24-28 of the FAC.  She argues that there is nothing vague about these allegations and notes that this is a motion to dismiss, not a motion for a more definite statement.  She argues that the Abbate Defendants "would have this Court unreasonably require the plaintiff, without even the benefit of discovery, to allege

matters only the wrongdoers could know, such as the date on which fabricated evidence was presented to the prosecution, the ultimate disposition of the videotapes from the Yosemite Chevron surveillance system, and like matters."

The Abbate Defendants reply:

> The opposition brief does no more than reiterate the claims in the [FAC] which in it of itself [sic] describes no more than testimonial acts. For instance, plaintiff alleges that the Abbate defendants downplayed the significance of a video tape. These allegations are testimonial in nature. What was fabricated and by whom, when and where and whether the evidence was used as trial is not alleged. Therefore, this absolute witness immunity bars the First Cause of Action.

Before the court is a motion to dismiss under Rule 12(b)(6) and there is no basis for the specific pleading required by Rule 9, Federal Rules of Civil Procedure. The allegations of the FAC are sufficiently specific to allow the Abbate Defendants to respond. The motion to dismiss the First Cause of Action on this ground is without merit and is DENIED.

### c.    **Sufficiency of Allegations of Conspiracy**.

The Abbate Defendants move to dismiss the First Cause of Action on the ground that the FAC fails to allege sufficient facts to support a claim of conspiracy.

However, as discussed above, given the pleading standards reiterated by the Supreme Court, the factual allegations of the FAC are sufficient to withstand dismissal under Rule 12(b)(6). The motion to dismiss on this ground is DENIED.

40

1          **2.   Third Cause of Action**.

2          The Abbate Defendants move for dismissal of the Third Cause

3    of Action for violation of Civil Code § 52.1 on several grounds.

4                    **a.   Sufficiency of Allegations of Threats,**

5    **Intimidation, or Coercion**.

6          The Abbate Defendants move to dismiss this cause of action,

7    contending:

8                    [T]he [FAC] makes <u>no</u> factual allegations to
                     identify or describe what if anything the
9                    Abbate defendants did to interfere with or
                     attempt to interfere with Plaintiff's state
10                   or federal constitutional rights by threats,
                     intimidation or coercion.  Instead of
11                   identifying such acts of threats,
                     intimidation or coercion, the [FAC]
12                   describes, albeit in broad terms, an alleged
                     conspiracy between the Abbate, Cassabon
13                   defendants, and the Merced County defendants
                     to subject Plaintiff to a malicious
14                   prosecution.  The only alleged threats were
                     directed to a witness, not to the plaintiff.

15
           As discussed above, Tiffany argues that Section 52.1 "does
16
     not require conduct that 'interferes by threats, intimidation, or
17
     coercion' with a claimant's exercise or enjoyment of her
18
     constitutional rights occur simultaneously with the resultant
19
     constitutional violation" and that Section 52.1 does not "require
20
     that this conduct play a direct role in bringing about the
21
     constitutional violation."  Tiffany concedes that no case law
22
     addresses these issues specifically in the context of Section
23
     52.1.  However, she refers to *McCalden v. California Library*
24
     *Association*, 955 F.2d 1214 (9th Cir.1989)*, cert. denied,* 504 U.S.
25
     957 (1992) as "finding a claim for a violation of California
26

                                      41

Civil Code § 51.7 sufficient, although it alleged non-contemporaneous intimidating conduct that was not even conveyed directly to the victim".

As discussed above, the analysis is the same.  Whether Tiffany's position is ultimately sustainable against the Abbate Defendants presents an issue of fact as well as law.  Given the standards governing resolution of a motion to dismiss, the FAC sufficiently alleges a claim for violation of Section 52.1 to allow the Abbate Defendants to respond.  The motion to dismiss on this ground is DENIED.

### b. **Immunity Pursuant to California Civil Code § 47(b)**.

The Abbate Defendants further move for dismissal of this cause of action based on the absolute immunity of Section 47(b). *See discussion supra.*

Dismissal on this ground is unwarranted.  The allegations of the FAC adequately allege that the Abbate Defendants fabricated the evidence presented at Tiffany's criminal trial.  The motion to dismiss on this ground is DENIED.

### 3. **Fourth Cause of Action**.

The Abbate Defendants move to dismiss the Fourth Cause of Action for malicious prosecution, reiterating the arguments made above in connection with the First Cause of Action concerning proximate causation.  The Abbate Defendants argue: "[T]he [FAC] alleges substantial intervening acts by the very law enforcement authority charged with investigating and prosecuting crimes and

their retained experts, the Cassabon defendants.  Therefore, the [FAC] fails to sufficiently allege proximate cause to support a malicious prosecution action against the Abbate defendants."

Causation is inherently a factual inquiry.  For the reasons set forth above, the Abbate Defendants are not entitled to dismissal of the malicious prosecution cause of action on the ground of lack of proximate cause as a matter of law.  The motion to dismiss is DENIED.

ACCORDINGLY, as set forth above:

1.  The Cassabon Defendants' motion to dismiss the First, Third and Fourth Causes of Action is DENIED.

2.  The Abbate Defendants' motion to dismiss the First, Third and Fourth Causes of Action is denied DENIED.

3.  Defendants shall file Answers to the First Amended Complaint within 20 days of the filing date of this Order.

IT IS SO ORDERED.

Dated:    December 19, 2006                    /s/ Oliver W. Wanger
668554                                  UNITED STATES DISTRICT JUDGE